Paul S. ADAMIAN, Plaintiff-Appellant,

v.

Dr. Louis E. LOMBARDI et al., Defendants-Appellees.

No. 76–2866.

United States Court of Appeals, Ninth Circuit.

Oct. 16, 1979.

Rehearing Denied Dec. 18, 1979.

Charles E. Springer, Ltd., Reno, Nev., for plaintiff-appellant.

Larry D. Lessly, Deputy Atty. Gen., Reno, Nev., argued and on brief, for defendants-appellees.

Before BREITENSTEIN * and DOYLE,** Circuit Judges, and POOLE,*** District Judge.

POOLE, District Judge.

On this, the second appeal in this matter, we review the discharge of Paul S. Adamian, an Assistant Professor of English at the University of Nevada, at Reno, arising from his conduct while participating in a campus demonstration during Governor's Day ceremonies, May 5, 1970, in the university stadium. The demonstration was in protest against the Cambodian invasion and the Kent State University killings. Our opinion on the prior appeal (*Adamian v. Jacobsen,* 523 F.2d 929 (9th Cir. 1975)), described the facts as follows at 931:

" * * * On prior application of the demonstrators, the Board of Regents (the Board) had given them permission to march three times around the stadium track. The protest went beyond the march, however, Adamian (yelling, 'Let's stop this mother—.') and others tried to stop a motorcade bringing officials for the ceremonies into the stadium; led by Adamian the demonstrators then made loud noises to disrupt the ceremonies. Still later, Adamian left the stands, joined a group on the field and motioned other demonstrators onto the field, thus creating a danger of violent confrontation between two bodies of people.

"The Board directed that charges be brought against Adamian. He was summoned before a Faculty Senate hearing committee which found that his conduct had violated chapter 4, section 2.3, of the University Code, and thus constituted

'adequate cause' under the Code for his dismissal. Although the committee recommended that his employment not be terminated unless he indulged in similar conduct in the future, the Board rejected the recommendation and ordered Adamian's dismissal."

Adamian responded by filing a civil rights action in the district court under 42 U.S.C. § 1981 and § 1985,[1] alleging violation of his First Amendment speech rights and of his Fourteenth Amendment due process rights in depriving him of his tenured professorship, and in the manner by which, and the reasons for which, it was accomplished. He named as defendants the University, the Board of Regents and its members individually. He sought reinstatement, compensation for lost earnings, and damages for violation of his civil rights. The district court dismissed the University and the Board of Regents because neither state agency was a "person" within the meaning of the Civil Rights Act, 42 U.S.C. § 1983. *Whitner v. Davis,* 410 F.2d 24 (9th Cir. 1969). Action continued against all Regents in their representative capacities (F.R.Civ.P. 25(d)(1)) and against all Regents (who were such at the time of plaintiff's dismissal) in their individual capacities.

Adamian moved for partial summary judgment, arguing that Section 2.3 of the University Code, upon which the Regents relied in dismissing him, was unconstitutionally vague and over-broad, impinging upon his First Amendment rights of free speech and assembly, as well as violating his due process rights under the Fourteenth Amendment.

---

* Honorable Jean S. Breitenstein, Senior Circuit Judge, United States Court of Appeals, Tenth Circuit, sitting by designation of the Intercircuit Assignment Committee.

** Honorable William E. Doyle, Circuit Judge, United States Court of Appeals, Tenth Circuit, sitting by designation of the Intercircuit Assignment Committee.

*** Honorable Cecil F. Poole, United States District Judge for the Northern District of California, sitting by designation.

After this appeal had been argued and submitted, Judges Duniway and Choy concluded

that they should disqualify themselves from further participation in the decision. By order of March 6, 1979, submission for decision was vacated. Subsequently, the Chairman of the Intercircuit Assignment Committee certified consent for Judges Breitenstein and Doyle to constitute a new hearing panel along with Judge Poole.

1. In ruling on a motion to dismiss, the district court treated the action as an attempt to state a claim under 42 U.S.C. § 1983. On the first appeal, we treated the claim likewise.

## PRIOR RULINGS OF THE DISTRICT COURT

The district court examined the language of Section 2.3 which reads as follows:

"The faculty member is a citizen, a member of a learned profession, and a representative of this University. When he speaks or writes as a citizen, he will be free from University censorship or discipline, but his special position in the community imposes special obligations. As a man of learning and as an educator, he knows that the public may judge his profession and this University by his utterances. At all times he strives to be accurate, to exercise appropriate restraint, to show respect for the opinions of others, and to make every effort to indicate that he is not a spokesman for this University."

In weighing plaintiff's challenge, the Court found irrelevant questions such as whether plaintiff had in fact received procedural due process, or whether his conduct could be construed to be proscribed by the Section. It invoked *Dombrowski v. Pfister*, 380 U.S. 479, 486, 85 S.Ct. 1116, 1121, 14 L.Ed.2d 22 as authority for allowing "attacks on overly broad statutes [involving constitutionally protected expression] with no requirement that the person making the attack demonstrate that his own conduct could not be regulated by a statute drawn with the requisite narrow specificity." It held that the code language was so overbroad that it could authorize a tenured professor's termination for utterances which are merely inaccurate, contrary to *Pickering v. Board of Education*, 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968); and so vague that men of common intelligence could differ as to its meaning. *NAACP v. Button*, 371 U.S. 415, 83 S.Ct. 328, 9 L.Ed.2d 405 (1963).

The District court entered summary judgment for plaintiff ordering his reinstatement and compensation for his loss of earnings. *Adamian v. University of Nevada*, 359 F.Supp. 825 (D.Nev.1973). The Regents appealed. We reversed. *Adamian v. Jacobsen*, 523 F.2d 929 (9th Cir. 1975).

## FORMER OPINION—SECTION 2.3

Looking at the University of Nevada Code, this Court saw that it requires that tenured professors be dismissed only for adequate cause, and that in dismissing Adamian the Board of Regents had found adequate cause. The opinion held that, "the term 'adequate cause' must be interpreted in the context of traditional standards of faculty behavior; its vagueness is a necessary result of the many forms of faculty conduct which might justify dismissal." 523 F.2d at 932. The Court had in mind the common sense postulate that the lawmaker is not required to enact a detailed code of employee conduct. *Arnett v. Kennedy*, 416 U.S. 134, 94 S.Ct. 1633, 40 L.Ed.2d 15 (1974). But it also noted that when such a regulation may impinge on First Amendment freedoms, "we . . . require greater precision and specificity than would be necessary to fulfill Fifth or Fourteenth Amendment due process requirements." 523 F.2d at 932. Judged in this light, the standard of "adequate cause" could conceivably have broad enough sweep to include oppressive activity and thus be vulnerable to the possibility of infringing upon constitutionally protected speech or conduct.

But Judge Choy's carefully considered opinion emphasized the caution that, in the analysis of a state regulation, the judgment as to its facial validity must rest on its meaning "as authoritatively construed by [the appropriate] state court or agency [empowered to do so]." 523 F.2d at 932; and *see Gooding v. Wilson*, 405 U.S. 518, 92 S.Ct. 1103, 31 L.Ed.2d 408 (1972). The appropriate agency here is the Board of Regents which found Adamian's conduct to be adequate cause for dismissal when examined in the light of Section 2.3. Most of the language of that section appeared to us to be "merely hortatory," but the Regents gave it a construction—particularly as to the last sentence—which had the effect of narrowing the standards by which to judge conduct appropriate for tenured faculty. That last sentence reads:

"At all times he strives to be accurate, to exercise appropriate restraint, to show

respect for the opinion of others, and to make every effort to indicate that he is not a spokesman for this University." The Regents viewed this language as requiring that a professor seek accuracy, restraint, and that as a representative of his learned profession he display the educator's respect for the opinion of others. The record below suggested that the Regents viewed these words as referring not to pure speech, but to expressive conduct; as dealing with manner, with seemliness of expression, rather than with content. Such construction would be entitled to great deference. *Jablon v. Trustees of the California State Colleges*, 482 F.2d 997, 999 (9th Cir. 1973), *cert. denied*, 414 U.S. 1163, 94 S.Ct. 926, 39 L.Ed.2d 116 (1974). Under these circumstances we thought it appropriate to apply the test which weighs the potentially "chilling effect" of possibly imprecise words against the interests of the state in the conduct at issue. This is the test of *Broadrick v. Oklahoma*, 413 U.S. 601, 615, 93 S.Ct. 2908, 2918, 37 L.Ed.2d 830 (1973) [involving a state "Hatch Act"], in which a majority of the court, through Mr. Justice White, stated:

> "To put the matter another way, particularly where conduct and not merely speech is involved, we believe that the overbreadth of a statute must not only be real, but substantial as well, judged in relation to the statute's plainly legitimate sweep."

"Substantial," the majority said, calls for "case-by-case analysis of the fact situations to which its [the statute's] sanctions, assertedly, may not be applied." 413 U.S. at 616, 93 S.Ct. at 2918.

Applying the above principle to this case, we noted in our opinion that Section 2.3 had been adopted from the 1940 Statement of Principles of the American Association of University Professors. Academic Freedom and Tenure: A Handbook of the American Association of University Professors 36 (1969). The Association itself had construed the language of the Section with full consideration of its effect on academic freedom. The Association asserted unequivocally that it was not directed at the substance of a teacher's remarks, and that, as a

standard, it could not appropriately be invoked except " * * * when the remarks raise 'grave doubts' concerning his fitness for his position * * *." 523 F.2d at 934.

We therefore concluded that since the Association had so narrowed the language of the Section, any substantive overbreadth had been eliminated, and that what remained was well outside of *Broadrick's* requirement of "substantial overbreadth." Accordingly, we remanded to the district court with direction to hear testimony from the Regents to determine whether their construction had been the same as that of the AAUP.

### FINDINGS AND DECISION ON REMAND

In May 1976, the district court proceeded to take testimony on the question whether the Regent's interpretation of Chapter 4, Section 2.3 of the University Code was the same as that of AAUP. Seven of the Regents testified that their construction was the same as that given by the AAUP. The district court thereupon found that to be the fact and, consequently, that Section 2.3 is not unconstitutionally overbroad. The court further found as a fact that the administrative hearing which the Regents had afforded Adamian comported with substantive and procedural due process.

As to Adamian's contention that his termination violated his First Amendment right to freedom of speech, the Court found the case controlled by *Pickering v. Board of Education, supra*, 391 U.S. at 573, 88 S.Ct. 1731, and equated Adamian's conduct to the intentionally disruptive acts which led to the discharges involved in *Whitsel v. Southeast Local School District*, 484 F.2d 1222 (6th Cir. 1973) [faculty member encouraged high school students to resist disciplinary authority and continue unauthorized assembly protesting discharge of another teacher, suggesting the discharge had been improper]; and *Gray v. Union County Intermediate Education District*, 520 F.2d 803 (9th Cir. 1975) [untenured teacher attempted to interfere with agency-guardian's decision not to have retarded minor ward undergo a therapeutic abortion].

**1228**

The district judge on remand made findings that:

"Professor Adamian played a prominent role in unauthorized student protest activities during school hours on school property. He continued to lead raucous catcalls after the University President had asked the audience to be quiet. His conduct in attempting to stop the Governor's motorcade, in leading raucous catcalls, and in charging onto the field during the ceremonies encouraged students to participate in similar activities. His acts caused a substantial and material disruption of a duly constituted university function which created a danger of violence. The Court can only conclude that plaintiff's activities went beyond the mere advocacy of ideas and counselled a course of action, interfered with the regular operation of the school, and consequently was outside the protection of the First Amendment. Therefore, this Court holds that plaintiff was not denied freedom of speech. *Accord, Mabey v. Reagan,* No. 74–3413 (9th Cir. June 1, 1976)."

 Counsel for Adamian has argued that we should now review *de novo* the rulings of our earlier opinion. However, the scope of review is narrowed to the limitations of the remand. This Court's prior holding has become the law of the case, binding upon the present panel. *Haldane v. Ruppe,* 435 F.2d 647 (9th Cir. 1970), *cert. denied,* 402 U.S. 906, 91 S.Ct. 1372, 28 L.Ed.2d 646 (1971); *Clinton v. Joshua Hendy Corp.,* 285 F.2d 199 (9th Cir. 1960), *cert. denied,* 366 U.S. 932, 81 S.Ct. 1654, 6 L.Ed.2d 391 (1961). Appellant does not challenge the manner or fairness of the proceedings of the Court below.

 As did the district judge, we hold that Professor Adamian was not denied freedom of speech, nor of assembly, nor equal protection. Our review of the record discloses no error below.

The judgment of the district court is affirmed.