**BOARD OF TRADE OF SAN FRANCISCO, Plaintiff,**

and

**Electronic Arrays, Inc., Plaintiff-in-Intervention/Appellant,**

v.

**SWISS CREDIT BANK, Defendant-Appellee.**

No. 83–1852.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 15, 1983.

Decided March 20, 1984.

Michael A. Ladra, Wilson, Sonsini, Goodrich & Rosati Palo Alto, Cal., for plaintiff.

Harvey L. Gould, Leland, Parachini, Steinberg, Flinn, Marzger & Melnick, San Francisco, Cal., for defendant-appellee.

Before MERRILL[*] and BOOCHEVER, Circuit Judges, and WYZANSKI,[**] Senior District Judge.

BOOCHEVER, Circuit Judge.

This action arose out of the dishonor of a letter of credit issued by Swiss Credit Bank (SCB) in favor of Antex Industries (Antex) to cover the sale of 92,000 electronic integrated circuits, or "chips," manufactured by Electronic Arrays (Arrays) for use in electronic computers.

---

[*] Judge Merrill concurred in this disposition but was unavailable to approve the final form of the Opinion.

[**] Hon. Charles E. Wyzanski, Jr., Senior District Judge, United States District Court for the District of Massachusetts, sitting by designation.

The magistrate[1] found that the dishonor was justified because Antex failed to comply with the manner of shipment specified in the letter of credit. We affirm.

## BACKGROUND

The buyers of the chips, North American Trading Corporation (North American), arranged for SCB to open the letter of credit in favor of Antex and for Bank of America National Trust and Savings Association, San Francisco (BA) to act as advising bank. To obtain drafts on the credit, Antex had to present BA with various documents, including "full set clean on board bills of lading consigned to the Chase Manhattan Bank, Tokyo, for account of North American Foreign Trading Corporation, New York." .

Antex made a partial shipment of the chips by air and presented BA with a draft for $176,000 and documents covering the shipment. BA questioned whether the air waybill conformed to the terms of the credit, in other words, whether "full set clean on board bills of lading" restricted shipment to marine shipment. Although SCB, after contacting its account party, authorized payment, it specifically explained that the original terms of the credit were not being amended. When Antex shipped the remaining chips by air, SCB refused payment.

When the goods arrived in Tokyo, Chase Manhattan Bank released them to the buyer, but North American did not tender payment. Antex filed a claim with the American Arbitration Association for the $136,000 owed on the goods. North American counterclaimed that the goods were defective. The arbitrator awarded $227,133 on the counterclaim, but set off any amount up to $136,000 not paid under the letter of credit. In September 1976 North American obtained from the San Francisco Superior Court a judgment confirming the arbitration award. North American assigned that judgment to SCB.

While the arbitration proceeding was pending, Antex filed this action in district court against SCB for wrongful dishonor of the letter of credit. The Board of Trade of San Francisco, as assignee for the benefit of Antex's creditors, was substituted as plaintiff in the district court case. Arrays intervened as assignee of the proceeds, claiming that it, not Board of Trade, was entitled to the proceeds. Eventually Arrays entered into a settlement agreement whereby it released Board of Trade and Antex from any claims it may have had by virtue of the assignment of the credit proceeds and in return received an assignment of Board of Trade's and/or Antex's causes of action against SCB. The district court issued a summary judgment against SCB.

This court reversed the summary judgment against SCB and remanded for a factual determination of the meaning of "full set clean on board bills of lading." *Board of Trade v. Swiss Credit Bank*, 597 F.2d 146, 149 (9th Cir.1979). On remand, the magistrate found that the term restricted shipment to ocean shipment. Because Antex does not appeal that determination, we address the narrow question of whether the dishonor was proper in view of shipment by means other than that specified in the letter of credit. For the reasons discussed below we agree with the magistrate that dishonor of the letter of credit was justified.

## ANALYSIS

### 1. *Assignability*

As a preliminary matter, we address SCB's contention that the action must be dismissed because the wrong party is before the court.

 SCB argues that, because Arrays at most is an assignee of the proceeds and not an assignee of the letter of credit itself, Arrays has no right to sue SCB directly; its rights are against its assignor only. Because Arrays also is an assignee of Antex's cause of action against SCB on the letter of credit, we need not reach the issue of whether an assignee of proceeds may sue the obligor directly. As assignee of the cause of action, Arrays may maintain this action against SCB. Under California law,

1. The parties agreed to proceed to trial before a magistrate pursuant to 28 U.S.C. § 636(c)(3).

A thing in action, arising out of the violation of a right of property, or out of an obligation, may be transferred by the owner.

Cal.Civ.Code § 954.[2] With the exception of causes of action of a personal nature, such as injuries arising out of tort, a cause of action is assignable. *Goodley v. Wank & Wank, Inc.,* 62 Cal.App.3d 389, 393–94, 133 Cal.Rptr. 83, 84–85 (1976). The proper party is before the court.

### 2. Strict Compliance With The Terms of a Letter of Credit

SCB dishonored the letter of credit because of Antex's failure to comply with its terms. Arrays concedes for purposes of this appeal that the letter of credit required marine shipment and that Antex's air shipment was nonconforming. Arrays maintains, however, that the dishonor was improper, because the manner of shipment was not material.

■ This court's earlier decision in the case precludes Arrays' argument that Antex's noncompliance with the terms of the letter of credit was not a material defect. *See Adamian v. Lombardi,* 608 F.2d 1224, 1228 (9th Cir.), *cert. denied,* 446 U.S. 938, 100 S.Ct. 2158, 64 L.Ed.2d 791 (1979) ("the scope of review is narrowed to the limitations of the remand"). As we noted in the prior decision, strict compliance with the letter's terms was required:

> The Bank notes that strict compliance with the terms of the letter of credit is required. *See, e.g., Courtaulds North America, Inc. v. North Carolina National Bank,* 528 F.2d 802 (4th Cir.1975) [Parenthetical explanation omitted]; *Crocker First Nat. Bank v. De Sousa,* 27 F.2d 462 (9th Cir.), *cert. denied,* 278 U.S. 650 [49 S.Ct. 94, 73 L.Ed. 561] (1928) [Parenthetical explanation omitted]. In this case the shipment was by air, not ocean; and if the Bank's interpretation of the letter of credit is correct, the refusal to pay was not wrongful.

*Board of Trade v. Swiss Credit Bank,* 597 F.2d at 147–48.

Even if we were not bound by the prior decision, we would reach the same result. The issuer of a letter of credit should not be placed in the position of having to determine whether an unauthorized method of shipment is material. In this instance, whether air shipment would have been considered hazardous by the parties or apt to cause damage to sensitive electronic equipment is not the type of evaluation that should be required in a transaction where promptness and certainty are of the essence. Absent a waiver, an issuer may insist on strict compliance with the terms of a letter of credit. *Marino Industries v. Chase Manhattan Bank, N.A.,* 686 F.2d 112, 114–15 (2d Cir.1982); White & Summers, *Handbook of the Law under the Uniform Commercial Code,* § 18–6 (2d ed. 1980). In fact, the parties here agreed to be bound by the Uniform Customs and Practice for Documentary Credits (1974 Revision) International Chamber of Commerce (Brochure No. 290), which requires strict compliance with all terms of the letter of credit. Uniform Customs, Article 8.

### 3. Estoppel

Arrays contends that even if Antex defaulted on the terms of the letter of credit SCB's dishonor was improper, because once SCB dishonored the letter of credit it violated its obligation to ensure that title to the goods did not pass to the buyer before payment. SCB's failure to prevent title from passing to the buyer, maintains Arrays, should estop SCB from relying on the seller's default to justify its dishonor of the letter of credit.

■ The argument presents complex first impression issues to this court. We, however, need not address those issues here. Arrays failed to plead delivery of the goods, the necessary basis for the argument that title passed to the buyer.

■ Moreover, even if we were to hold that delivery of the goods estops the bank from relying on the failure to comply with

---

**2.** "A thing in action" is defined as "a right to recover money or other personal property by a judicial proceeding." Cal.Civ.Code § 953.

the terms of the letter of credit, the result would not change. SCB was assigned the arbitration award. It therefore had the right to set off the amounts due under that award against the sums owed under the letter of credit.

Because the arbitration award was issued on April 26, 1976, and the cause of action against SCB was not assigned to Arrays until September 1976, the right to offset existed prior to notice of the assignment. Arrays took subject to it. The assignee of a cause of action stands in the shoes of the assignor; "his rights and remedies [are] subject to any right to offset or other defenses existing against the assignor prior to actual notice of the assignment." *Salaman v. Bolt,* 74 Cal.App.3d 907, 919, 141 Cal.Rptr. 841, 847 (1977); Cal.Com.Code §§ 5116(2) and 9318(1).

We conclude that SCB was justified in dishonoring the letter of credit because of Antex's failure to comply with its terms. Any right Arrays might have had from an estoppel argument is subject to SCB's right to set off that judgment against the arbitration award. The district court's judgment is AFFIRMED.