Argued and submitted June 25, affirmed October 24, 1984

## RONALD A. AND CAROLINE OLSON, INC.,
*Appellant,*

*v.*

## UNITED STATES NATIONAL BANK OF OREGON,
*Respondent.*

(A8304-02151; CA A30159)

689 P2d 1021

Lee M. Hess, Portland, argued the cause for appellant. With him on the briefs were Swire, Riebe & Hess, Portland.

Mark A. Anderson, Portland, argued the cause for

respondent. With him on the brief were Michael E. Arthur and Miller, Nash, Wiener, Hager & Carlsen, Portland.

Before Richardson, Presiding Judge, and Warden and Newman, Judges.

NEWMAN, J.

### NEWMAN, J.

Plaintiff appeals a summary judgment for defendant. We affirm. Defendant issued a letter of credit for $57,275 naming plaintiff as beneficiary to secure performance of a note executed by $M_2S_2$, Inc.[1] (the buyer) for the price of certain assets purchased by it. The letter of credit provided that drafts on it must be submitted on or before March 15, 1983, and be "accompanied by the following documents":

"Beneficiaries *[sic]* sworn statement and documents supporting it that:

"(a) $M_2S_2$, Inc., is in default under its promissory note to beneficiary dated December 29, 1980, and that such default occurred on or before December 31, 1982.

"(b) Written demand for correction of such default was delivered to $M_2S_2$, Inc., within ten days of such default.

"(c) More than 30 but not more than 60 days have elapsed since delivery of such notice of *[sic]* $M_2S_2$, Inc.

"(d) A true copy of the sworn statement was delivered to at least one of the stockholders of $M_2S_2$, Inc."

On February 22, 1983, plaintiff submitted an affidavit to defendant that read in part:

"$M_2S_2$, Inc., is in default under its Promissory Note payable to Ronald and Caroline Olson, Inc., dated December 29, 1980, by virtue of its failure to provide a renewal or replacement of said letter of credit more than Fourteen (14) Days prior to December 31, 1982. Said default occurred on or before December 31, 1982.

"Written demand for correction of said default was delivered to $M_2S_2$, Inc., within Ten (10) days of such default, to-wit: December 30, 1982, a copy of which letter is hereto attached."

Plaintiff may not recover unless it complies strictly with the requirements of the letter of credit. *See Marshall-Wells Co. v. Tenney et al.,* 118 Or 373, 244 P 84 (1926);[2] *see also*

---

[1] Defendant filed an answer and third-party complaint against $M_2S_2$, Inc. After allowing defendant's motion for summary judgment, the court entered a judgment dismissing plaintiff's third-party action against $M_2S_2$, Inc.

[2]

"It is well settled that, after the intention of the parties or the scope of the guarantor's undertaking has been determined, by the ordinary rules of construc-

*Insurance Co. of North America v. Heritage Bank,* 595 F2d 171 (3d Cir 1979). This rule is not stated, or given meaning, in the portion of the Uniform Commercial Code that specifically addresses letters of credit, ORS 75.1010 to ORS 75.1170, but the UCC also refers us to the "principles of law and equity" for guidance. ORS 71.1030.

Plaintiff argues that its affidavit and accompanying demand letter complied on their face strictly with the letter of credit. Both parties agree that the contract of purchase provided that the buyer would be in default on the note if it did not renew the letter of credit more than 14 days prior to its expiration - that is, not later than December 16, 1982. Plaintiff, however, argues that defendant cannot assert that plaintiff's demand of December 30, 1982, was not "within ten (10) days of such default," because the affidavit affirms it was and because an assertion to the contrary is based not on the affidavit but on the terms of the underlying contract of purchase.

Defendant does not dispute that "[a]n issuer's liability on a letter of credit is controlled solely by the terms of that letter." *East Girard Sav. Ass'n v. Citizens Nat. Bank, etc.,* 593 F2d 598, 602 (5th Cir 1979). A "beneficiary's non-compliance with the underlying contract does not affect the issuer's liability unless a reference to the underlying contract explicitly creates a condition for honoring a draft." *Pringle-Assoc. Mortg. Corp. v. Southern Nat. Bank,* 571 F2d 871, 874 (5th Cir 1978). Defendant asserts that it could determine from the face of the affidavit that plaintiff had not complied strictly with the letter of credit's requirement that plaintiff must make written demand within the 10-day period.[3] We agree.

In addition to its assertion that plaintiff make timely

---

tion either from the instrument itself in which it is clearly expressed, or from the instrument and the surrounding circumstances, the rule of *strictissimi juris* applies, that is, that the guarantor is entitled to have his undertaking as thus determined strictly construed and that it cannot be extended by construction or implication beyond the precise terms of his contract; and he has the right to insist upon the strict performance of any terms or conditions which have been stipulated, and it is incumbent upon one who claims the benefit of a guaranty to show that its terms have been strictly complied with: 28 C.J., p. 935, § 80." 118 Or at 383.

[3] Defendant also raises certain technical defects in the affidavit. We do not reach these questions.

written demand on buyer, the affidavit stated that the buyer was in default under the note because it had failed to renew the letter of credit "more than Fourteen (14) days prior to December 31, 1982." The affidavit informed defendant, therefore, that the buyer was in default under the note on December 17, 1982. It also informed defendant that plaintiff had delivered written demand to the buyer on December 30, 1982, 13 days after the default. Defendant did not need to look at the underlying contract of purchase. Plaintiff's tardy demand upon the buyer for correction of its default is apparent from the face of plaintiff's affidavit. Accordingly, the court did not err in granting summary judgment to defendant.

■ Plaintiff also argues that the summary judgment was error because the letter of credit is ambiguous. It asserts that the words "within ten (10) days of such default" could refer either to the initial occurrence of default or to the entire period during which the default continues. We find no ambiguity. The only reasonable interpretation of the words "within ten days of such default" is within ten days of the first day of that default. The ten-day requirement would be meaningless if it referred to any date within the period during which a default continues, because a default could continue indefinitely.

Affirmed.