Morris BISKER, Appellant,

v.

NATIONSBANK, N.A., Appellee.

No. 95–CV–1782.

District of Columbia Court of Appeals.

Argued Nov. 21, 1996.

Decided Dec. 19, 1996.

---

Kenneth C. Smurzynski, Washington, DC, with whom Bruce R. Genderson was on the brief, for appellant.

Nicholas T. Christakos, Washington, DC, with whom Jay Y. Mandel was on the brief, for appellee.

Before FERREN, STEADMAN, and FARRELL, Associate Judges.

FARRELL, Associate Judge:

This appeal concerns the refusal of a bank which issued a letter of credit to honor a demand for payment by the beneficiary because a principal document accompanying the demand was not in compliance with the terms of the letter of credit. We join the broad majority of courts in concluding that strict compliance is necessary in this unique setting. As the compliance here did not meet that standard, we hold that the bank breached no contractual or other duty to appellant in refusing to honor presentment.

## I.

In 1985, appellant (Bisker) entered an agreement with Beer Distributing Company (BDC) to sell BDC his interest in American–Potomac Distributing Company (AP). Bisker received a promissory note from ·BDC which was guaranteed by Stanley S. Bender. In exchange, Bisker relinquished his 50% interest in AP to BDC; his shares were to be escrowed until payment of the note. In 1987, a new agreement replaced the earlier one. Bisker relinquished his right to hold the AP stock in escrow, as well as the personal guarantee of Bender. In return, Bisker received Irrevocable Letter of Credit No. 1791(LOC) issued by Sovran Bank/DC National, the predecessor in interest of appellee NationsBank. Bisker was also to receive a new promissory note in the amount of $800,000 which was non-recourse and secured exclusively by the LOC. The note was executed on May 22, 1987, by Bender as maker on behalf of BDC. On or about that same day, Bisker received what he believed was the original of the note, but in fact was a photocopy.[1] The LOC,

---

1. The letter to Bisker from his then attorney enclosing the transaction documents, including the new promissory note, referred to them as "original documents."

however, required by its express terms that demand for payment on the credit must be accompanied by, *inter alia,* "1. Original of the promissory note executed May 22nd, 1987, ('the Promissory Note')."

When payment on the final balloon installment of the note was not made as promised, Bisker, on July 10, 1995, demanded payment on the LOC by NationsBank in the amount of $595,853.71, representing the outstanding principal, interest and late penalties due. NationsBank refused the demand, asserting that the presentment did not meet the terms of the LOC because, among other things, the promissory note accompanying the demand was not the original note but instead a duplicate photocopy. After Bisker confirmed this fact through an expert document examiner, Bender, the original signator, re-signed the copy of the note just above his previous signature. On August 14, 1995, Bisker resubmitted the LOC along with the re-executed note, but NationsBank again refused the demand stating: "Original of the promissory note executed on May 22, 1987, not presented." [2]

Bisker filed suit in Superior Court alleging breach of contract and breach of the implied covenants of good faith and fair dealing by NationsBank. On November 20, 1995, Judge Hamilton granted NationsBank's motion to dismiss on the ground that it failed to state a claim upon which relief could be granted. The judge explained:

> This court has applied the rule of strict compliance as set forth in *Washington Fed. Sav. & Loan v. Prince George's Cty.,* 80 Md.App. 142, 143, 560 A.2d 585 [582], 583, *cert. denied,* 317 Md. 641, 566 A.2d 102 (1989). Moreover, the court finds *Vanden Brul v. MidAmerican Bk. & Trust,* 820 F.Supp. 1311 (D.Kan.1993) dispositive.[3]

## II.

The issue of first impression in this jurisdiction presented by this case is whether something less than strict compliance by the beneficiary with the terms of a letter of credit is enough to require the issuing bank to honor a demand for payment. Recognizing, as have the courts and commentators, the unique role of this "quick, efficient, inexpensive" tool in commercial transactions, *LeaseAmerica Corp. v. Norwest Bank Duluth,* 940 F.2d 345, 349 n.4 (8th Cir.1991) (citation omitted), we hold that strict compliance as defined below is required. The essential features and purposes of a letter of credit dictate that answer.

Article 5 of the Uniform Commercial Code (UCC) deals with letters of credit. It "treat[s] credits as unique devices" and sets out the "formal requirements" governing them, including the relationship of the parties to the credit transaction and the duty and privilege of an issuer with respect to payment. JOHN F. DOLAN, THE LAW OF LETTERS OF CREDIT ¶ 2.01, at 2–3 (rev. ed.1996). These requirements are contained in D.C.Code §§ 28:5–101 to 28:5–117 (1996). Article 5, however, does not deal with "all of the rules and concepts of letters of credit as such rules or concepts have developed ... or may hereafter develop...." *Id.* § 28:5–102(3). Further understanding is provided by the Uniform Customs and Practice for Documentary Credits (1983 rev.), International Chamber of Commerce Brochure No. 400 (UCP 400), referenced in the LOC in this case, and by case law. *See Mercantile–Safe Deposit & Trust Co. v. Baltimore County,* 309 Md. 668, 526 A.2d 591, 594 (1987).

D.C.Code § 28:5–103(1)(a) defines a "[c]redit" or "letter of credit" as:

> an engagement by a bank or other person made at the request of a customer and of a kind within the scope of this article (section 28:5–102) that the issuer will honor drafts or other demands for payment upon compliance with the conditions specified in the credit. A credit may be either revocable or irrevocable. The engagement may

---

2. The re-presentation cured the other defects that had caused the initial rejection.

3. Although the trial judge purported to dismiss under Super. Ct. Civ. R. 12(b)(6) (1996), her ruling was based partly on consideration of ex-

hibits presented outside the pleadings; hence we treat her ruling as a grant of summary judgment. *See, e.g., Foretich v. CBS, Inc.,* 619 A.2d 48, 54 n. 10 (D.C.1993).

be either an agreement to honor or a statement that the bank or other person is authorized to honor.

Besides a "customer" (a "buyer or other person who causes an issuer to issue a credit," § 28:5–103(1)(g)) and an "issuer" ("a bank or other person issuing a credit," § 28:5–103(1)(c)), the third party to the typical letter of credit is a "beneficiary," a person "entitled under [the] terms [of a credit] to draw or demand payment." § 28:5–103(1)(d). Although historically the letter of credit was used primarily in international transactions involving the sale of goods, today it is

> used increasingly in domestic transactions and functions as much as a means of "standby" credit as [it does as a form] of commercial credit. A standby letter of credit serves a purpose similar to that of a guaranty by providing payment to a beneficiary upon default of a party that was obliged to perform.... [It] serve[s], as in the present case, as a "back up" device against customer default.

*Mercantile-Safe Deposit,* 526 A.2d at 593–94 (citations omitted).

■ The unique feature of a letter of credit transaction is that it "deals in documents and is wholly independent of the underlying transaction in goods [or credit]." *Confeccoes Texteis de Vouzela v. Riggs Nat'l Bank,* 301 U.S.App. D.C. 304, 305, 994 F.2d 851, 852 (1993). Unless otherwise agreed, it relieves the issuer of responsibility "for performance of the underlying contract for sale or other transaction between the customer and the beneficiary," and "for any act or omission of any person other than itself ... or for loss or destruction of a draft, demand or document ... in the possession of others." § 28:5–109(1)(a) & (b). The issuer's duty, besides general "good faith and observance of any general banking usage," is to "examine documents with care so as to ascertain that *on their face* they appear to comply with the terms of the credit...." § 28:5–109(2) (emphasis added).[4] Once the issuer determines that a draft or demand for payment "complies with the terms of the relevant credit," it must honor the demand "regardless of whether the goods or documents conform to the underlying contract for sale or other contract between the customer and the beneficiary." D.C.Code § 28:5–114(1). Unless otherwise agreed, the issuer is then "entitled to immediate reimbursement of ... payment made under the credit" by the customer. § 28:5–114(3).

In keeping with its disavowal of "deal[ing] with ... all of the rules and concepts of letters of credit," § 28:5–102(3), the District's version of the UCC does not expressly state whether the conformity of a tender is governed by a test of strict compliance or one of lesser, "substantial" compliance.[5] The overwhelming weight of decisional and commentator authority, however, favors strict compliance and the oft-cited maxim from a case of the House of Lords that, in letter of credit transactions, "[t]here is no room for documents which are almost the same, or which will do just as well." *Equitable Trust Co. of New York v. Dawson Partners, Ltd.,* 27 Lloyd's List L. Rep. 49, 52 (H.L.1927).[6] This

---

4. "Documents which appear on their face to be inconsistent with one another will be considered as not appearing on their face to be in accordance with the terms and conditions of the credit." UCP 400, Article 15.

5. The most recent version of the Uniform Commercial Code, promulgated in 1995, acknowledges strict compliance as the proper test. *See* U.C.C. § 5–108(a) & cmt. 1 (1995). The revised Code and comments have not yet been adopted in the District of Columbia.

6. *See, e.g., Bebco Distributors, Inc. v. Farmers & Merchants Bank,* 485 So.2d 330 (Ala.1986); *Board of Trade v. Swiss Credit Bank,* 728 F.2d 1241 (9th Cir.1984) (applying California law); *Colorado Nat'l Bank v. Board of County Comm'rs,* 634 P.2d 32 (Colo.1981); *Armac Indus., Ltd. v.*

*Citytrust,* 203 Conn. 394, 525 A.2d 77 (1987); *Fidelity Nat'l Bank v. Dade County,* 371 So.2d 545 (Fla.Dist.Ct.App.1979); *First Nat'l Bank v. Rosebud Hous. Auth.,* 291 N.W.2d 41 (Iowa 1980); *Mercantile–Safe Deposit & Trust Co. v. Baltimore County,* 309 Md. 668, 526 A.2d 591 (1987); *Brown v. United States Nat'l Bank of Omaha,* 220 Neb. 684, 371 N.W.2d 692 (1985); *Insurance Co. of N. Am. v. Heritage Bank, N.A.,* 595 F.2d 171 (3d Cir.1979) (applying New Jersey law); *United Commodities–Greece v. Fidelity Int'l Bank,* 64 N.Y.2d 449, 489 N.Y.S.2d 31, 478 N.E.2d 172 (1985); *Dubose Steel, Inc. v. Branch Banking & Trust Co.,* 72 N.C.App. 598, 324 S.E.2d 859 (1985); *Kelly–Springfield Tire Co. v. Dakota Northwestern Bank, N.A.,* 321 N.W.2d 516 (N.D.1982); *Lennox Indus., Inc. v. Mid–American Nat'l Bank & Trust Co.,* 49 Ohio App.3d 117, 550 N.E.2d 971 (1988); *Ward Petroleum Corp. v. Fed-*

standard, which treats the issuing bank's duty to check documents for compliance as "entirely ministerial," *Insurance Co. of N. Am. v. Heritage Bank*, 595 F.2d 171, 173 (3d Cir.1979), serves two purposes:

> (1) providing certainty of payment to the beneficiary and (2) allowing the issuing bank to evaluate precisely its risks under the letter of credit. It is the certainty of payment that gives the letter of credit its unique value as an instrument to secure obligations of all kinds.... By the same token, the fact that the bank's obligation is defined solely by the terms and conditions of the letter of credit allows the bank to evaluate precisely the extent of the risks involved in its undertaking pursuant to the letter of credit.... "These risks ... involve potential liability to at least two parties: the beneficiary of the credit and the party for whose account the credit is issued. Under these circumstances the issuer ... of a credit must know who does what and with whom, and must be sure that his expectations in that regard will not be altered."

*Consolidated Aluminum Corp. v. Bank of Virginia*, 544 F.Supp. 386, 396 (D.Md.1982) (quoting HENRY HARFIELD, LETTERS OF CREDIT 2 (1979)), *aff'd*, 704 F.2d 136 (4th Cir.1983). Focusing upon this "potential liability" of the issuing bank, one court has explained the need for strict compliance as follows:

> The issuer of a letter of credit has only a short period of time to determine the conformity of a tender. In case of doubt, the issuer may consult its customer for advice about whether a tender is acceptable. When the beneficiary presses for payment while the customer urges dishonor, the issuer can only protect its right of reimbursement if it is entitled to insist on strict compliance by the beneficiary.

*Armac Indus., Ltd. v. Citytrust*, 203 Conn. 394, 525 A.2d 77, 80–81 (1987). In rejecting a rule of "substantial" or "reasonable compli-

ance," the Supreme Court of Wyoming has stated:

> To adopt a rule which becomes a vehicle for purely subjective judgments as to that which constitutes compliance would be inconsistent with the need to maintain a high level of predictability in commercial transactions. Requirements placed in a letter of credit by the parties must be taken to express the intent of the parties to anticipate compliance with them.

*Security State Bank of Basin v. Basin Petroleum Servs.*, 713 P.2d 1170, 1172 (Wyo.1986). Similar statements of the uncertainty that would flow from a lesser standard of compliance in this area appear in many of the decisions cited in footnote 6, *supra*.

■■■ We adopt the standard of strict compliance as best fulfilling the purposes of the letter of credit. The Third Circuit has best capsulized the relevant considerations:

> [E]ssential to the viability of this device is the certainty that it provides. Just as the beneficiary is induced to enter the underlying transaction because it is assured payment under specific terms agreeable to it, so too the bank assumes a primary obligation in part because its commitment is clearly defined within the four corners of the letter. If courts deviate from the rule of strict compliance and insist in certain undefined situations that banks make payments notwithstanding the fact that the beneficiary failed to comply with the terms stipulated in the letter of credit, the certainty that makes this device so attractive and useful may well be undermined, with the result that banks may become reluctant to assume the additional risks of litigation.

*Insurance Co. of N. Am.*, 595 F.2d at 176. At the same time, this standard leaves at least some play in the joints—"some leaven in the loaf of strict construction." *Banco Espanol de Credito v. State St. Bank &*

---

*eral Deposit Ins. Corp.*, 903 F.2d 1297 (10th Cir. 1990) (applying Oklahoma law); *Ronald A. & Caroline Olson, Inc. v. United States Nat'l Bank of Oregon*, 70 Or.App. 460, 689 P.2d 1021 (1984); *Chase Manhattan Bank v. Equibank*, 550 F.2d 882 (3d Cir.1977) (applying Pennsylvania law); *Temple–Eastex, Inc. v. Addison Bank*, 672 S.W.2d

793 (Tex.1984); *Newvector Communications, Inc. v. Union Bank*, 663 F.Supp. 252 (D.Utah 1987) (applying Utah law); *Security State Bank v. Basin Petroleum Servs., Inc.*, 713 P.2d 1170 (Wyo.1986).

Similarly, various commentators advocate the strict compliance standard. *See, e.g.*, DOLAN, *supra*, ¶¶ 6.02 to 6.05, at 6–3 to 6–58.

Trust Co., 385 F.2d 230, 234 (1st Cir.1967). "[T]he cases which apply [the strict compliance] rule are not so rigid as to permit an issuer to dishonor if it finds, for example, an obvious and immaterial typographic error." *Mercantile–Safe Deposit*, 526 A.2d at 596. A variance between documents specified and documents submitted may be put aside "if there is *no* possibility that the documents could mislead the paying bank to its detriment." *Flagship Cruises, Ltd. v. New England Merchants Nat'l Bank of Boston*, 569 F.2d 699, 705 (1st Cir.1978) (emphasis in original); *see Mercantile–Safe Deposit*, 526 A.2d at 596–98. But to justify a departure from the strict compliance rule, a court must truly be able to say that the variance was "*de minimis.*" *Vanden Brul v. MidAmerican Bank & Trust Co.*, 820 F.Supp. 1311, 1314 (D.Kan.1993).[7]

### III.

■ "One manifestation of the strict compliance rule is the long-standing practice among issuers to require original documents unless the letter of credit stipulates otherwise." *Western Int'l Forest Prods. v. Shinhan Bank*, 860 F.Supp. 151, 154 (S.D.N.Y. 1994). In this case, the LOC expressly required that demand be accompanied by "Original of the promissory note executed May 22nd, 1987." Bisker, in contending that he strictly complied with that term, argues first that the LOC did not refer to "*the* Original" (emphasis added) and that a duplicate may be "an original instrument repeated[;] . . . a new original" (citing BLACK's LAW DICTIONARY 503 (6th

ed.1990) ("duplicate")). In theory, although unlikely in practice, it is possible that the promissory note here was duplicated and each copy signed individually at the time of execution, thus creating duplicate "originals." But Bisker has never asserted that the note tendered here was an original of that kind; its claim of being an original derives from the fact that Bender signed it a second time eight years after the original execution. It therefore was unmistakably a copy of the note "executed May 22nd, 1987," and that the LOC did not permit its substitution for the original is confirmed by the next paragraph of the LOC, which states that demand for payment must also be accompanied by "2. Copy of letter in the form of Exhibit B" (emphasis added), notifying various persons of the default. The LOC itself thus distinguished between an original and a copy, requiring production of the original promissory note. *See Vanden Brul v. MidAmerican Bank, supra* (dishonor upheld where letter of credit called for presentment of "the original promissory note endorsed in blank . . . to indicate the current outstanding balance," 820 F.Supp. at 1312, but plaintiffs presented bank with photocopy of note with affidavits stating original had been lost or destroyed).

■ Bisker further contends that even if the note he presented was not the original, he strictly complied in that the underlying credit transaction involved a non-recourse promissory note "entirely without effect," *i.e.*, providing no more than "a schedule of payments"; hence the bank, having recovered the (paid) LOC, would face no risk of a

---

**7.** Appellant cites criticism of the strict compliance rule by the United States representative to the working group for the revision of the Uniform Customs and Practice for Documentary Credits. *See* Boris Kozolchyk, *Strict Compliance and the Reasonable Document Checker*, 56 Brook. L.Rev. 45 (1990). The particular statement of the author cited is this:

> No matter how few the documentary requirements in the operative credit instrument may be, there are always enough words or letters in the required documents to provide some basis for contesting payment based upon a missing comma, asterisk, or *duplicable copy.* To validate such bad faith practices in the name of strict compliance tips the contractual balance sharply in favor of applicants and against beneficiaries.

*Id.* at 53–54 (emphasis added). But what the author means by "duplicable copy" is shown by an example later given of an issuer's bad faith dishonor based on "[m]inor discrepancies which can be corrected by the remitting bank itself, *e.g.*, one copy of the packing list presented when [the] Letter of Credit stipulates four copies are required." In such cases, the author maintains, "it is possible for the remitting bank to make good discrepancies and effect payment." *Id.* at 61 n. 56 (quoting SITPRO, Letter Of Credit Management And Control 1, 6 (1985)). As will become apparent, that meaning of "duplicable copy" is worlds removed from the notion of "duplicate original" on which appellant relies.

second demand by a transferee holder in due course of the original note. This assertion is bold,[8] but more important, it disregards the essential nature of the letter of credit as a document transaction in which the issuer, performing the "ministerial" duty of checking documents for conformity, is not charged with knowledge of the peculiar features of the underlying agreement between beneficiary and customer. The unqualified nature of NationsBank's duty to pay upon satisfaction of the LOC's terms relieved it of any duty to consult legal counsel about differences between recourse and nonrecourse negotiable instruments in assessing its risk either of double presentment or of rebuff by its customer in demanding reimbursement after accepting a substitute for the original note. Appellant has cited no decision where a variance of this size between the required original and a copy of the very instrument for which the LOC was security has been deemed compliance with a letter of credit. We agree with the trial court that the bank properly rejected the presentment.

*Affirmed.*

---

8. For one thing, the LOC did not itself require tender of the original LOC.