## ARMAC INDUSTRIES, LTD. *v.* CITYTRUST
## (13022)

PETERS, C. J., HEALEY, SHEA, SANTANIELLO and CALLAHAN, Js.

Argued March 11—decision released May 5, 1987

*Gary P. Sklaver,* for the appellant (plaintiff).
*Richard J. Buturla,* for the appellee (defendant).

PETERS, C. J. The decisive question in this case is whether an issuing bank rightfully dishonored a demand for payment of a letter of credit because of discrepancies between the demand and the terms of the letter of credit. The plaintiff, Armac Industries, Ltd., the designated beneficiary of an irrevocable letter of credit, brought an action against the defendant Citytrust to recover $49,766.41, the face amount of the credit issued by the defendant at the request of its customer, Pac Corporation. After a hearing, the trial court rendered judgment for the defendant and the plaintiff has appealed.

The facts are undisputed. The Pac Corporation (Pac) arranged for the defendant to issue a commercial letter of credit in conjunction with Pac's purchase, on December 10, 1979, of an extrusion blow molding machine from the plaintiff. The plaintiff, a manufacturer of such machines, is a New York corporation which, at the time of the sale, had its principal place of business in Westbury, New York. Pac is a Connecticut corporation whose principal place of business is in Watertown. The defendant is a Connecticut bank. The purchase price for the machine was partially paid in cash, with the remainder to be paid through the letter of credit.

The defendant issued an irrevocable letter of credit in favor of the plaintiff for the sum of $49,766.41 on

April 27, 1981. As subsequently amended on May 8, 1981, the credit required the beneficiary to present for payment, through a commercial bank, a draft and a signed performance statement, in accordance with detailed specifications contained in the credit. The credit indicated that drafts were to be dated no earlier than May 25, 1981, and no later than June 30, 1981.

On behalf of the plaintiff, the European American Bank and Trust Company (EAB) sent a collection letter to the defendant on or about May 19, 1981, which was received on May 22, 1981. The collection letter referred to the letter of credit by number, and contained as attachments an unsigned draft and a bill of lading. The defendant determined that it would not honor this request for payment, because it deemed the presentment not to conform to the terms of the letter of credit, and because, in the interim, it had been served with a garnishment and restraining order in an action brought by its customer, Pac, against the plaintiff. Accordingly, on June 2, 1981, the defendant so advised EAB by telex, indicating in some detail the noncompliance of the draft with the terms of the letter of credit, and noting that the bill of lading did not satisfy the requirement for a signed performance statement. This telex was confirmed, two days later, when the defendant wrote EAB, returning to it the collection letter, together with the draft, bill of lading, letter of credit and amendment thereto. Although the letter of credit did not expire until June 30, 1981, the plaintiff made no further effort to tender a timely and proper demand for payment in conformity with its terms.

Several years later, in early 1985, the civil action between Pac and the plaintiff ended with a judgment for the plaintiff in the amount of $49,766.41. Upon the release of the garnishment issued in connection with that action, the plaintiff renewed its demand that the

defendant honor the letter of credit. When the defendant refused to do so, the present action ensued.

The trial court concluded that the plaintiff could not prevail because its demand for payment did not conform with the express terms and conditions of the letter of credit as amended. The court determined that the unsigned draft and the absence of the required performance statement constituted significant discrepancies in the plaintiff's tender. In assessing the significance of these discrepancies, and in rejecting the plaintiff's argument of waiver, the court attached considerable importance to the defendant's timely notification of the plaintiff, well in advance of the expiration date of the letter of credit, and to the plaintiff's failure to take any further timely steps to present proper documentation to the defendant.

The plaintiff's appeal from the judgment in favor of the defendant raises four issues. The plaintiff claims the trial court erred: (1) in failing expressly to define the standard of compliance that governs letters of credit; (2) in holding that the unsigned draft did not comply with the terms of the letter of credit; (3) in concluding that dishonor was justified because the tender lacked a performance statement; and (4) in failing to find waiver or estoppel with regard to the discrepancy in the size of the extruder as described in the letter of credit and the bill of lading. We find no error.

I

The law that governs letters of credit in this state is contained in article 5 of the Uniform Commercial Code, General Statutes §§ 42a-5-101 through 42a-5-117. A letter of credit, under the code, is an engagement by a bank or other person, made at the request of a customer, that the issuer will honor drafts or other demands for payment upon compliance by the beneficiary with the conditions specified in the credit. Gen-

eral Statutes § 42a-5-103 (1) (a); *New York Life Ins. Co.* v. *Hartford National Bank & Trust Co.,* 173 Conn. 492, 498, 378 A.2d 562 (1977); B. Clark, The Law of Bank Deposits, Collections and Credit Cards (Rev. Ed. 1981) § 8.2; J. White & R. Summers, Uniform Commercial Code (2d Ed. 1980) c. 18.

Letter of credit transactions have a tripartite nature because they involve three separate commitments. The first is the underlying contract between the customer and the beneficiary, here the sales contract between Pac and the plaintiff, Armac. The second is the contract between the customer and the issuer, here the contract between Pac and the defendant, Citytrust, concerning the issuance of the credit in exchange for the customer's promise to reimburse the issuer for payments made in conformance with the terms of the credit. The third is the letter of credit itself, obligating the issuer to honor proper drafts or other demands for payment by the beneficiary, if accompanied by the documentation required by the credit.

In the common law of letters of credit; *O'Meara Co.* v. *National Park Bank,* 239 N.Y. 386, 146 N.E. 636 (1925); and under the code; General Statutes §§ 42a-5-114 and 42a-5-109; the single most important legal principle is the independence of these three commitments, and especially the independence of the letter of credit from the underlying commercial agreement between the customer and the beneficiary. As a consequence, § 42a-5-114 (1) provides that the issuer must pay upon the tender of facially conforming documentation, "regardless of whether the goods or documents conform to the underlying . . . contract between the customer and the beneficiary."[1] Similarly, § 42a-5-109 (2) defines the issuer's duty to its customer as an obliga-

[1] The extent to which the issuer is obligated to honor a demand when the accompanying documents are forged or fraudulent or there is in fact "fraud in the transaction" is a more difficult question on which the com-

ion in good faith to examine documents with care "so as to ascertain that on their face they appear to comply with the terms of the credit . . . ." As a result, a letter of credit customer may have to reimburse a bank for its payments even though the customer might have a defense in a direct action on the underlying contract by the beneficiary of the letter of credit. *New York Life Ins. Co.* v. *Hartford National Bank & Trust Co.,* supra, 498–99; see also *East Girard Savings Assn.* v. *Citizens National Bank & Trust, Co.,* 593 F.2d 598, 601 (5th Cir. 1979); *Colorado National Bank of Denver* v. *Board of County Commissioners,* 634 P.2d 32, 36–37 (Colo. 1981); *Westwind Exploration, Inc.* v. *Homestate Savings Assn.,* 696 S.W.2d 378, 381 (Tex. 1985).

The parties to the present litigation do not dispute the general principle that letters of credit are documentary forms of transaction, in which the issuer's duty to pay is measured by the compliance of the beneficiary's tender with the terms of the credit without regard to the beneficiary's performance or nonperformance of the underlying contract. They disagree about a question that is not expressly addressed either by the governing statutes or by the Uniform Customs and Practice for Documentary Credits which the letter of credit in this case incorporated by reference.[2] That question is

---

mentators are in some disagreement. J. White & R. Summers, Uniform Commercial Code (2d Ed. 1980) p. 734; H. Harfield, Letters of Credit (1979) pp. 85–90.

[2] The Uniform Customs and Practice for Documentary Credits is a publication of the International Chamber of Commerce (ICC) setting forth rules governing documentary credits to facilitate international banking transactions. The letter of credit incorporated the 1974 revision of this ICC publication, which provides in relevant part:

"B. LIABILITIES AND RESPONSIBILITIES

"ARTICLE 7

"Banks must examine all documents with reasonable care to ascertain that they appear on their face to be in accordance with the terms and conditions of the credit. Documents which appear on their face to be incon

whether the conformity of a tender under a letter of credit is to be measured by a standard of strict compliance or of substantial performance. The trial court's failure to determine the proper standard is the first issue raised by the plaintiff's appeal. We agree that it is important to resolve this question before we undertake to analyze the specific discrepancies in the plaintiff's tender which the trial court held to be sufficient to justify the defendant's dishonor of the credit.

In order to determine the standard by which to measure the compliance of a beneficiary's tender, we must look to the purpose that a letter of credit is intended to serve. "[O]ne of the expected advantages and essential purposes of a letter of credit is that the beneficiary will be able to rely on assured, prompt payment from a solvent party; necessarily, a part of this expectation of ready payment is that there will be a minimum of litigation and judicial interference, and this is one of the reasons for the value of the letter of credit device in financial transactions." *New York Life Ins. Co.* v. *Hartford National Bank & Trust Co.*, supra, 499. In our view, that purpose can best be served by requiring strict compliance with the terms of a letter of credit.

---

sistent with one another will be considered as not appearing on their face to be in accordance with the terms and conditions of the credit.

"ARTICLE 8

"a. In documentary credit operations all parties concerned deal in documents and not in goods.

' b. Payment, acceptance or negotiation against documents which appear on their face to be in accordance with the terms and conditions of a credit by a bank authorized to do so, binds the party giving the authorization to take up the documents and reimburse the bank which has effected the payment, acceptance or negotiation.

"c. If, upon receipt of the documents, the issuing bank considers that they appear on their face not to be in accordance with the terms and conditions of the credit, that bank must determine, on the basis of the documents alone, whether to claim that payment, acceptance or negotiation was not effected in accordance with the terms and conditions of the credit.

"d. The issuing bank shall have a reasonable time to examine the documents and to determine as above whether to make such a claim."

The issuer of a letter of credit has only a short period of time to determine the conformity of a tender. In case of doubt, the issuer may consult its customer for advice about whether a tender is acceptable. When the beneficiary presses for payment while the customer urges dishonor, the issuer can only protect its right of reimbursement if it is entitled to insist on strict compliance by the beneficiary. For these reasons, in the language of an oft-cited English case, in letters of credit, "[t]here is no room for documents which are almost the same, or which will do just as well." *Equitable Trust Co. of New York* v. *Dawson Partners, Ltd.,* 27 Lloyd's List Law Rpts. 49, 52 (1926). We therefore subscribe to the view of the majority of the cases and the commentators that hold that a beneficiary may not complain of wrongful dishonor of a letter of credit without first establishing strict compliance of his tender with the terms of the credit. See, e.g., *Beyene* v. *Irving Trust Co.,* 762 F.2d 4, 6 (2d Cir. 1985); *Board of Trade of San Francisco* v. *Swiss Credit Bank,* 728 F.2d 1241, 1243 (9th Cir. 1984); *Philadelphia Gear Corporation* v. *Central Bank,* 717 F.2d 230, 235–36 (5th Cir. 1983); *Ins. Co. of North America* v. *Heritage Bank,* 595 F.2d 171, 175 (3d Cir. 1979); *Bossier Bank & Trust Co.* v. *Union Planters National Bank,* 550 F.2d 1077, 1081 (6th Cir. 1977); *Courtaulds North America, Inc.* v. *North Carolina National Bank,* 528 F.2d 802, 805–806 (4th Cir. 1975); *United Commodities-Greece* v. *Fidelity International Bank,* 64 N.Y.2d 449, 455, 478 N.E.2d 172, 489 N.Y.S.2d 31 (1985); B. Clark, The Law of Bank Deposits, Collections and Credit Cards (Rev. Ed. 1981) § 8.5 [4]; H. Harfield, Letters of Credit (1979) p. 37; contra *Flagship Cruises, Ltd.* v. *New England Merchants National Bank,* 569 F.2d 699, 705 (1st Cir. 1978); *First National Bank* v. *Wynne,* 149 Ga. App. 811, 815–16, 256 S.E.2d 383 (1979); *First Arlington National Bank* v. *Stathis,* 90 Ill. App. 3d 802, 814–16,

413 N.E.2d 1288 (1980); *CNA Mortgage Investors, Ltd.* v. *Hamilton National Bank,* 540 S.W.2d 238, 241 (Tenn. App. 1975); 7 R. Anderson, Uniform Commercial Code (3d Ed. 1985) § 5-109:9.

## II

Having decided that the standard by which to measure the plaintiff's tender is strict compliance with the terms of the letter of credit issued by the defendant, we turn now to the plaintiff's remaining claims of error. The plaintiff urges us to hold that the trial court erred in concluding that the draft and the bill of lading presented to the defendant by EAB on the plaintiff's behalf failed to conform to the terms of the credit. He also maintains that the defendant waived, or should be estopped from claiming, any discrepancy between the size of the extruder as described in the letter of credit and in the bill of lading. These claims of error require a precise comparison between the terms of the credit and the documentation presented by the EAB collection letter. We agree with the trial court that the plaintiff has failed to establish wrongful dishonor on the part of the defendant.

The letter of credit, as amended, specifically conditioned the defendant's undertaking in the following terms. With respect to the demand for payment, the credit authorized the plaintiff to draw drafts at five days sight, the drafts to be dated not later than June 30, 1981, but not before May 25, 1981. The amount of any draft drawn under the credit was required to be endorsed on the reverse of the original credit and all drafts were required to be marked as drawn under Citytrust Letter of Credit Number S-3279 dated April 27, 1981. With respect to the presentation of the demand for payment, the credit further required that presentation be made through a commercial bank and accompanied by a designated document. This document was described

as a "signed statement stating that the 'Armac Extrusion Blow Molding Machine, with 1¼ inch extruder, presently in Armac Industries, Ltd. plant premises, has been picked up at the Armac Industries, Ltd. plant premises in Westbury, New York.' "

The collection letter sent by EAB to the defendant on May 19, 1981, on behalf of the plaintiff, referred on its face to "L/C on Pac Corporation drawn on City Trust LC -S 3279 dated 4/27/81 with documents attached" and sought payment in the principal amount of $49,766.41 due at five days sight. Attached to the collection letter were: (1) the original amended letter of credit, unendorsed; (2) an unsigned draft dated May 26, 1981, in the face amount of the credit; and (3) a short form straight bill of lading. The unsigned draft contained a blank for Citytrust's authorized signatory as drawer, was payable to the plaintiff, and on its reverse side, was endorsed by the plaintiff and by EAB. The bill of lading, signed by the plaintiff as shipper and by an agent for the carrier, described the following packages:

"1 Blow Mold Machine Model C 1. 75 ser. #271080 as per following:

1 1¾ Extruder complete with Drive-Hopper & Hydraulic system.

1 Blow Mold Press complete with blowing station — 4 blow pins — stripper & 4 cavity mold for 8 oz. bottle."

The defendant received EAB's collection letter on May 22, 1981. Nine days later, it was served with a complaint, garnishment and restraining order in an action brought by its customer, Pac, against the plaintiff. On June 2, 1981, the defendant notified EAB by telex that it would not honor the request for payment because of the outstanding garnishment and restraining order and because of discrepancies in the present-

ment. The defendant identified these discrepancies as follows:

"1. Draft not signed by drawer: does not indicate tenor: L/C No. and issuance date of L/C

2. B/L presented in lieu of performance statement."

Two days later, the defendant wrote EAB, returning to it the collection letter, together with the draft, bill of lading, letter of credit and amendment thereto. The letter of credit expired by its terms on June 30, 1981, without any further demand for payment by or on behalf of the plaintiff.

On this record, as the trial court concluded, the plaintiff cannot be said to have proven strict compliance with the terms of the letter of credit. The defendant was fully justified in finding discrepant both the draft and the substitute for the signed performance statement tendered by the plaintiff.

With respect to the draft, we need only address the fact that it was not signed by the drawer. The provisions of § 42a-5-103 (3) expressly incorporate the definition of "draft" contained in § 42a-3-104.[3] Under the latter section, a draft must be signed by a drawer to be a valid instrument. In addition, § 42a-3-115 (1) provides that an instrument which is incomplete when it

[3] General Statutes § 42a-3-104 provides in relevant part: "FORM OF NEGOTIABLE INSTRUMENTS; 'DRAFT'; 'CHECK'; 'CERTIFICATE OF DEPOSIT'; 'NOTE'. (1) Any writing to be a negotiable instrument within this article must (a) be signed by the maker or drawer; and (b) contain an unconditional promise or order to pay a sum certain in money and no other promise, order, obligation or power given by the maker or drawer except as authorized by this article; and (c) be payable on demand or at a definite time; and (d) be payable to order or to bearer.
"(2) A writing which complies with the requirements of this section is (a) a 'draft' ('bill of exchange') if it is an order; (b) a 'check' if it is a draft drawn on a bank and payable on demand; (c) a 'certificate of deposit' if it is an acknowledgement by a bank of receipt of money with an engagement to repay it; (d) a 'note' if it is a promise other than a certificate of deposit."

is signed "cannot be enforced until completed." On its face, the draft presented by the plaintiff was, at best, an incomplete instrument that was unenforceable.

The plaintiff's arguments to the contrary are unpersuasive. A draft signed by the plaintiff as drawer was required in order to assure the defendant that presentment was being made on behalf of the beneficiary designated in the credit. The stipulation in the letter of credit that the amount of any draft drawn thereunder be endorsed on the original credit is a normal precaution against the risk of overpayment, and did not, as the plaintiff contends, excuse the tender of the drawer's draft. Finally, the plaintiff's signature on the rear of the unsigned draft did not cure the absence of a drawer's signature; a signature in an ambiguous capacity is deemed to be an endorsement, and an endorsement is merely a conditional engagement to pay an instrument according to its tenor at the time of its endorsement. General Statutes §§ 42a-3-402, 42a-3-414 (1). If, according to its tenor, the draft was then incomplete and unenforceable, such a defect is not cured by an endorsement.[4]

The noncompliance of the unsigned draft with the terms of the credit was alone sufficient to justify the defendant's dishonor of the demand for payment. For the sake of completeness we note, however, our agreement with the conclusion of the trial court that a straight bill of lading is not "a signed statement stating that the 'Armac Extrusion Blow Molding Machine, with 1¼ inch extruder, presently in Armac Industries, Ltd. plant premises, has been picked up at the Armac Industries, Ltd. plant premises in Westbury, New

---

[4] In light of this fatal discrepancy in the draft, we need not decide whether the failure to indicate, on the face of the draft, the tenor, letter of credit number and issuance date of the credit, would themselves have warranted dishonor. These technical discrepancies arguably might have been cured by the terms of the collection letter that contained this information.

York.' " The plaintiff virtually concedes this point, relying on cases adopting the substantial performance standard that we have rejected.

Finally, we find nothing in this record to support the plaintiff's argument of waiver or estoppel with regard to the discrepancy in the description of the size of the extruder, which was to be 1¼ inches under the letter of credit but was specified as 1¾ inches in the bill of lading. That argument is unpersuasive for two reasons: (1) since the plaintiff's tender was, as we have concluded, defective in two other respects, it is irrelevant whether it was also defective in this regard, and any possible waiver is immaterial; and (2) since waiver and estoppel depend upon affirmative findings of fact by the trial court; *Loda* v. *H.K. Sargeant & Associates,* 188 Conn. 69, 76, 448 A.2d 812 (1982); *Multiplastics, Inc.* v. *Arch Industries, Inc.,* 166 Conn. 280, 286, 348 A.2d 618 (1974); *Girden* v. *Alubowicz,* 136 Conn. 511, 513, 72 A.2d 491 (1950); the absence of such factual findings, unless clearly erroneous, is dispositive. The trial court was entitled to discredit the testimony of the plaintiff's president about an alleged conversation about the size of the extruder with an unidentified person at the defendant's place of business. We note, furthermore, that the cases of waiver on which the plaintiff relies are all factually distinguishable from the case before us. In those cases, the issuer affirmatively misrepresented that noncomplying documents would be acceptable and retracted that misrepresentation at a time when the beneficiary no longer had an opportunity to cure the defect of which it had been belatedly advised. *Barclays Bank D.C.O.* v. *Mercantile National Bank,* 481 F.2d 1224, 1236–37 (5th Cir. 1973), cert. dismissed, 414 U.S. 1139, 94 S. Ct. 888, 39 L. Ed. 2d 96 (1974); *U.S. Industries, Inc.* v. *Second New Haven Bank,* 462 F. Sup. 662, 664 (D. Conn. 1978). That is a far cry

from the facts here, where the plaintiff had ample time to cure the discrepancies of which it was accurately put on notice.

There is no error.

In this opinion the other justices concurred.