[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiffs, Putnam Riverview, Inc., Zoltan Guttman, CT Page 1052 Harry Hirsch, Joseph Voll, Mike Hirsch, and Arnold Portnoy ("Putnam") seek a preliminary injunction enjoining defendant UST Bank/Connecticut ("the bank") from paying any amount to defendant Yankee Gas Services Company ("Yankee") under the terms of a certain letter of credit. The plaintiff's verified complaint alleges that the letter of credit at issue was obtained from the bank and provided to Connecticut Light and Power Company ("CLP") as security for Putnam's obligations to CLP.
The court finds the facts established at the hearing on the plaintiff's application to be as follows.
On or about December 11, 1990, Carolyn Joy, a member of the legal staff of Yankee, called Peter Maher, Senior Vice-President of the bank, and advised him that Yankee was considering calling in a letter of credit furnished by Putnam. Attorney Joy inquired as to the amount of the letter of credit and the applicable draft number, and Maher supplied that information, indicating that the amount was $232,000.00.
On December 31, 1990, at approximately 3:00 p. m., Attorney Joy went to the bank, saw Maher, and presented him with a drawing certificate (Ex. 1) and a sight draft (Ex. 2) seeking payment of the $232,000.00. She did not possess and did not produce the original letter of credit. While Joy and Maher had different recollections and interpretations of the words that passed between them, the court finds that Maher invoked the lateness of the hour and the imminence of a legal holiday and indicated that a response to Yankee's demand for payment would not occur until the next business day, January 3, 1991. Maher initialled the documents presented to indicate that they had been presented to him on December 31, 1990. Maher requested documentation to establish that Yankee was a successor to CLP's interest in the letter of credit, and Joy, who was unable to present any such evidence at the time, offered to send him a document substantiating this relationship by facsimile transmission on January 3, 1991.
On the morning of January 3, 1991, Maher and other bank officials were advised by Putnam of its position that the bank should not pay on the letter of credit because Yankee had failed to furnish a certificate from an officer of CLP that Putnam was in default on its underlying obligation, and Putnam denied being in default.
Finding itself in the middle of a dispute in which it was likely to be pursued by either side, the bank has not paid on the letter of credit but is awaiting the outcome of Putnam's application for injunctive relief. CT Page 1053
The letter of credit at issue, Ex. I, is addressed to Connecticut Light and Power Company and states:
 By the order of Putnam Riverview, Inc., 6 Woody Lane, Fairfield, Connecticut, we hereby open in your favor and in favor of any entity succeeding to the gas distribution assets of the Connecticut Light and Power Company, our Irrevocable Credit for the account of Putnam Riverview, Inc. for a sum or sums not exceeding a total of U.S. Dollars Two Hundred Thirty-two Thousand ($232,000) and no/100 U.S. Dollars available by your draft(s) at SIGHT on UST Bank/Connecticut, 189 State Street, Bridgeport, Connecticut and expiring at Bridgeport on December 31, 1990.
 Drafts must be accompanied by: Your statement signed by an executive officer of The Connecticut Light and Power Company certifying: "The amount of our draft represents funds due by reason of a default on the part of Putnam Riverview, Inc. of its payment obligation under that certain agreement dated May 2, 1988 between Putnam Riverview, Inc. and the Connecticut Light and Power Company to be hereinafter referred to as the "Agreement", demand for payment has been made, and payment has not been received by us from Putnam Riverview, Inc. or any other source."
The letter of credit further provided that "[i]n no event will the expiration date of this letter of credit be extended beyond December 31, 1990," and that "drafts drawn under and in compliance with the terms of this letter of credit will be duly honored if presented to the above mentioned drawee bank on or before December 31, 1990, unless terminated previously as described herein."
The letter of credit, by its terms, is subject to the Uniform Customs and Practices for Documentary Credits (1974 Revision), International Chamber of Commerce Publications 290.
The officer's statement furnished by Yankee when it presented the letter of credit on December 31, 1990 was signed by Charles E. Gooley, who was identified on the certificate as Vice-President and General Counsel of Yankee. Attorney Joy did not present the bank with any officer's statement signed by an officer of CLP, as required by the letter of credit, nor did she furnish any evidence that Yankee was the assignee of CLP and was thereby entitled to present the letter of credit for payment. CT Page 1054
The purpose of a preliminary injunction is to preserve the status quo and protect the movant from immediate and irreparable harm until the rights of the parties can be determined upon a full hearing on the merits of the claim for permanent injunctive relief. Olcott v. Pendleton, 128 Conn. 292,295 (1974), Deming v. Bradstreet, 85 Conn. 650, 659
(1912).
In assessing what it termed the analogous situation of the granting of a stay of an administrative order in Griffin Hospital v. Commission on Hospitals and Health Care, 196 Conn. 451,457 (1985), the Connecticut Supreme Court, citing Olcott v. Pendleton, supra, stated that entitlement to such temporary relief requires a showing of 1) probable success on the merits of the claim and 2) a balancing of the results which may be caused to one party or the other from the granting of such temporary relief. The court in Griffin Hospital, supra, at 488, also cited with approved Covenant Radio Corporation v. Ten Eighty Corporation, 35 Conn. Sup. 1, 3 (1977), which enunciates as additional requirements for temporary injunctive relief, 3) irreparable injury and 4) lack of an adequate remedy at law.
The plaintiff has made a showing of probable success on the merits.
The Uniform Customs and Practices for Documentary Credits (1974 Revision), to which the letter of credit at issue is subject, provide at Article 7 that banks "must examine all documents with reasonable care to ascertain that they appear on their face to be in accordance with the terms and conditions of the credit." The party presenting the letter of credit was not CLP, to whom the credit was issued, and on December 31, 1990, Yankee provided no evidence that it was the successor to or assignee of CLP. The officer's statement presented in the drawing certificate was not, on its face, signed by an officer of CLP as required by the terms of the letter of credit, which was drafted by CLP.
In Armac Industries, Ltd. v. Citytrust, 203 Conn. 394
(1987), the Connecticut Supreme Court ruled that strict compliance, not substantial performance, is the standard applicable to tenders of letters of credit. Compliance with the terms of the document, not application of extrinsic knowledge on the part of a bank officer, is required. As the Supreme Court put it, "there is no room for documents which are almost the same or will do just as well." Armac, supra, at 401.
The plaintiff has established a strong likelihood of prevailing on its claim that the tender did not strictly comply CT Page 1055 with the terms of the letter of credit, that no complying tender was made by December 31, 1990, and that the letter of credit, by its terms, expired on that date.
As the Supreme Court pointed out in Armac, at 398, letter of credit transactions have a tripartite nature, encompassing 1) the underlying contract between the bank's customer (Putnam) and the beneficiary of the letter of credit; 2) the letter of credit itself, obligating the issuing bank to pay the beneficiary, and 3)the contract between the bank and the customer to issue a letter of credit to a beneficiary in return for the customer's promise to reimburse for payments made in conformity with the terms of the letter of credit.
This court does not rely on any showing of default or lack of default as to the underlying agreement between Putnam and the gas distributor but has concluded the probability of success on the merits only of the claim that the bank was required to dishonor the letter of credit because the tender was not made in strict conformity with the terms of the letter of credit itself.
Preliminary injunctive relief has been held to be appropriate to prevent a bank from honoring a disputed letter of credit during the pendency of the case in Rockwell International Systems, Inc. v. Citibank N.A., 719 F.2d 583,586-71 (2d. Cir. 1983). See also Atlas Mini-Storage v. First Interstate Bank, 426 N.W.2d 686 (Iowa App. 1988). Such relief has been held to be warranted where, as here, the customer makes a showing that the necessary documents as set forth in the letter of credit were not tendered or were improper. North American Foreign Trading Corp. v. Genero Electronics, 413 N.Y.S.2d 700, 702 (Appellate Div. 1979).
Upon consideration of the standards governing preliminary relief in light of the evidence presented, this court finds that the plaintiff had made the requisite showings.
Accordingly, it is hereby ordered that UST Bank/Connecticut and its agents, servants, and employees are enjoined from paying any amount to defendant Yankee Gas Services Company under the terms of the letter of credit that is Exhibit 1 in the proceedings in this court until further court order.
BEVERLY J. HODGSON JUDGE OF THE SUPERIOR COURT CT Page 1056