MARY JANE CATANIA *v.* JOSEPH CATANIA
(9936)

NORCOTT, LAVERY and LANDAU, Js.

Argued September 30, 1991—decision released January 14, 1992

*Dennis C. LaGanza,* for the appellant (defendant).

*Timothy A. Daley,* with whom, on the brief, was *Robert J. Williams,* for the appellee (plaintiff).

LAVERY, J. This case concerns the liability of the defendant, Joseph Catania, on a promissory note executed on December 14, 1983. The trial court found that the defendant was a comaker of the note and rendered judgment for the plaintiff, Mary Jane Catania, in the amount of $18,629.98, plus interest, costs and attorney's fees. On appeal, the defendant claims that (1) the

trial court improperly ruled that he was a comaker instead of an accommodation maker, and (2) he is discharged from liability pursuant to General Statutes § 42a-3-606. We affirm the judgment of the trial court.

The trial court found the following facts. The property securing the note at issue is located in the town of Enfield and was acquired by the defendant's mother in 1976. She purchased the property for the benefit of the plaintiff and Vincent Catania, who were married at that time and used the property as their principal residence. Vincent is the defendant's brother and the plaintiff's former husband. At the time of the transaction, the plaintiff and Vincent agreed to pay the mortgage and real estate taxes on the property. Title, however, remained in the name of Vincent's mother.

In 1977, Vincent's mother conveyed the property to her son Joseph, the defendant, without Joseph's knowledge or consent. The defendant did not learn that he was record owner of the property until some time after 1980, when he received a tax notice from the town of Enfield. The defendant's role was strictly that of a trustee because he did not obtain any benefit from the property.

The plaintiff and Vincent were divorced in 1980. The divorce decree provided that Vincent was to pay the mortgage payments, homeowners' insurance premiums and real estate taxes until their youngest child reached age eighteen. The divorce decree further provided that upon certain conditions, the property was to be sold, with the proceeds to be divided equally between the plaintiff and Vincent. The defendant, although record owner of the property, was not a party to the divorce proceedings. The plaintiff failed to record the judgment on the land records, and the defendant remained record owner of the property.

In 1982, Vincent caused a second mortgage to be taken out on the property. The New England Bank and Trust Company was the lender. The defendant, as record owner of the property, signed a loan guarantee agreement pledging the property as collateral to secure his brother's loan. The loan agreement contained a reservation of rights clause. The defendant received no benefit from this loan. Rather, Vincent used the proceeds to pay past due mortgage payments, property taxes and other bills.

In 1983, the defendant and Vincent executed the note at issue in this appeal. This note also was secured by a mortgage on the property that served as collateral for the prior loan. The defendant and Vincent signed this note on a line labeled "borrower's signature," and the defendant executed a mortgage deed in favor of the New England Bank and Trust Company to secure the loan. Again, the defendant received no benefit from this loan. Vincent used the proceeds to pay property taxes and to satisfy his obligation on the 1982 indebtedness.

The plaintiff obtained a judgment that quieted title in her name in 1986. The judgment paralleled the terms of the divorce decree. Between 1988 and 1989, Vincent stopped making mortgage payments on both the first and second mortgages on the property. In May, 1989, New England Bank and Trust Company brought an action to foreclose the note and mortgage. The defendant, Vincent, the plaintiff, and her minor children were all named defendants. On May 24, 1989, the plaintiff paid New England Bank and Trust in exchange for an assignment of the 1983 promissory note. Vincent had filed for bankruptcy under the Federal Bankruptcy Code on May 19, 1989. He was granted a discharge in bankruptcy on September 26, 1989. The plaintiff had unsuccessfully opposed Vincent's attempt to discharge the debt to the bank.

The present action was commenced on August 22, 1989, with the plaintiff seeking payment of the note plus interest, costs and attorney's fees. At trial, the plaintiff maintained that the 1983 promissory note was validly negotiated by New England Bank and Trust to the plaintiff who became a holder, and that the defendant, as a maker, owed the plaintiff the value of the note. Although the defendant asserted that he was merely acting as an accommodation party for Vincent, the trial court found that he introduced no facts to show that New England Bank and Trust Company knew or accepted him as an accommodation party. The only evidence the defendant introduced to show he was an accommodation party pointed to the fact that he signed both the guarantee agreement in 1982 and the promissory note in question in 1983 to accommodate Vincent.

The defendant first asserts that the trial court improperly ruled that he was a comaker of the installment loan note executed in 1983 because he proved his status as an accommodation maker pursuant to General Statutes § 42a-3-415.[1] Because an accommodation party signs an instrument for the purpose of lending his name to another party to it, the essential character of an accommodation party is that of a surety. Gen-

---

[1] General Statutes § 42a-3-415 provides: "CONTRACT OF ACCOMMODATION PARTY. (1) An accommodation party is one who signs the instrument in any capacity for the purpose of lending his name to another party to it.

"(2) When the instrument has been taken for value before it is due the accommodation party is liable in the capacity in which he has signed even though the taker knows of the accommodation.

"(3) As against a holder in due course and without notice of the accommodation oral proof of the accommodation is not admissible to give the accommodation party the benefit of discharges dependent on his character as such. In other cases the accommodation character may be shown by oral proof.

"(4) An endorsement which shows that it is not in the chain of title is notice of its accommodation character.

"(5) An accommodation party is not liable to the party accommodated, and if he pays the instrument has a right of recourse on the instrument against such party."

eral Statutes § 42a-3-415 (1). An accommodation party can sign a note in any capacity—as a maker, acceptor, drawer or endorser. 1 J. White & R. Summers, Uniform Commercial Code (3d Ed.) § 13-13, p. 657. Except as against a holder in due course,[2] without notice of accommodation, "the accommodation character [of an instrument] may be shown by oral proof." General Statutes § 42a-3-415 (3); *Bizzoco* v. *Chinitz,* 193 Conn. 304, 308, 476 A.2d 572 (1984). The defendant, as the party claiming accommodation status, bears the burden of proving his accommodation status, which includes proof of the original holder's knowledge or acceptance of him as an accommodation maker. *Bizzoco* v. *Chinitz,* supra, 308–309.

The intention of the parties is an important factor to consider when determining accommodation status. *Kerney* v. *Kerney,* 120 R.I. 209, 214, 386 A.2d 1100, 1102 (1978); *Dalton* v. *George B. Hately Co., Inc.,* 634 S.W.2d 374, 378 (Tex. App. 1982); *Utah Farm Production Credit Assn.* v. *Watts,* 737 P.2d 154, 158 (Utah 1987). "[I]t is a question of the intention of the person claimed to be an accommodation party, the person who would be the accommodated party, *and the person who was the holder of the paper when the alleged accommodation party signed.*" (Emphasis in original.) *Utah Farm Production Credit Assn.* v. *Watts,* supra; 6 R. Anderson, Uniform Commercial Code (3d Ed.) § 3-415:16.

The intention of the parties as to accommodation status is a factual issue. See *MacArthur* v. *Cannon,* 4 Conn. Cir. Ct. 208, 214, 229 A.2d 372 (1967). As such, it is within the sole province of the trier of fact to decide. *Tyers* v. *Coma,* 214 Conn. 8, 12–13, 570 A.2d 186 (1990). The trial court's determination of intent is

---

[2] The plaintiff concedes that she is not a holder in due course.

not reviewable unless the conclusion drawn is one that cannot be reasonably made. *Rebillard* v. *Hagedorn,* 6 Conn. App. 355, 357, 505 A.2d 731 (1986); *Lord* v. *Stavrakis,* 6 Conn. App. 161, 162, 503 A.2d 629, cert. denied, 199 Conn. 804, 506 A.2d 146 (1986). As a reviewing court, we cannot sift and weigh evidence, for to do so would usurp the role of the trial court. *State* v. *Cofield,* 220 Conn. 38, 49, 595 A.2d 1349 (1991); *Essex Savings Bank* v. *Leeker,* 2 Conn. App. 98, 102, 476 A.2d 1071 (1984).

A review of the trial court's memorandum of decision discloses that the court examined both the note itself and the parol evidence presented by the parties. The defendant concedes that the trial court did consider the parol evidence presented, but asserts that the court failed to focus on the most significant factors underlying the parties' intentions. Although § 42a-3-415 (3) permits the admission of parol evidence to establish the accommmodation status of a party to a note, it does not compel the trier of fact to conclude that the accommodation status has been proven. *Bizzoco* v. *Chinitz,* supra, 308. In the present case, the trial court found that the defendant held the property which was the collateral for the note as a trustee for Vincent. The trial court further found that the defendant introduced no evidence to show that the bank, as holder of the note, had notice, knew or accepted him as an accommodation maker. Consequently, the trial court ruled that the defendant was a comaker, rather than an accommodation maker.

"Where supported by the evidence, as in this case, the trial court's findings of fact are outside the review of this court. Our function in this regard is limited solely to the determination of whether or not the decision of the trial court was clearly erroneous." *Thomas F. Golden Realty Co.* v. *Echo Six,* 9 Conn. App. 52, 56,

514 A.2d 390 (1986); Practice Book § 4061. We conclude that the trial court's decision was not clearly erroneous.

The defendant next claims that he is discharged from liability pursuant to General Statutes § 42a-3-606[3] because the plaintiff altered the terms for payment of the note and impaired the collateral securing the note. The suretyship defenses as set forth in § 42a-3-606, however, are available only to a party who is in the position of surety. See General Statutes § 42a-3-606. As White and Summers note in their work on the Uniform Commercial Code, "[s]ection 3-606 (a) (1) specifies changes in the legal relationship between debtor and creditor that discharges the surety." (Emphasis added.) J. White & R. Summers, supra, § 13-15. A comaker of a note is not a surety. Because the trial court found that the defendant was a comaker of the note and not an accommodation maker, he cannot avail himself of the suretyship defenses as set forth in § 42a-3-606. Official comment 1 to General Statutes § 42a-3-606; J. White & R. Summers, supra, § 13-13.

The judgment is affirmed.

In this opinion the other judges concurred.

---

[3] General Statutes § 42a-3-606 provides in pertinent part: "IMPAIRMENT OF RECOURSE OR OF COLLATERAL. (1) The holder discharges any party to the instrument to the extent that without such party's consent the holder (a) without express reservation of rights releases or agrees not to sue any person against whom the party has to the knowledge of the holder a right of recourse or agrees to suspend the right to enforce against such person the instrument or collateral or otherwise discharges such person, except that failure or delay in affecting any required presentment, protest or notice of dishonor with respect to any such person does not discharge any party as to whom presentment, protest or notice of dishonor is effective or unnecessary . . . ."