NAUGATUCK SAVINGS BANK *v.* ANTHONY T.
FIORENZI ET AL.
(15083)

CALLAHAN, NORCOTT, KATZ, PALMER and M. HENNESSEY, Js.

---

295

Argued November 30, 1994—decision released February 21, 1995

*Raymond J. Antonacci,* for the appellant (plaintiff).

*Frederick W. Krug,* for the appellee (defendant Cynthia A. Sodlosky).

PALMER, J. The dispositive issue in this appeal is whether a mortgagee is entitled to foreclose an open-end mortgage purporting to secure the obligation of a mortgagor who is secondarily liable for an open-end loan when the mortgage deed fails to comply with the provisions of General Statutes § 49-4b.[1] The plaintiff,

---

[1] General Statutes § 49-4b provides: "OPEN-END MORTGAGE AS SECURITY FOR GUARANTY OF AN OPEN-END LOAN. MORTGAGE DEED REQUIREMENTS. DESCRIPTION OF LOAN AND SECONDARY LIABILITY. (a) If an open-end mortgage meets the requirements of this section, such mortgage shall secure the obligation of any person who is secondarily liable for an open-end loan, including (1) a commercial revolving loan, as defined in subsection (c) of section 49-2, without regard to whether the authorized amount of indebtedness of such revolving loan constituting the underlying obligation shall at that time or at any time have been fully advanced, (2) future advances under such open-end loan, to the extent that such mortgagor is secondarily liable for such future advances, and (3) a letter of credit. Such mortgagor's secondary liability for such future advances shall be secured by such open-end mortgage equally with the obligation secured by such mortgage at the time of recording such mortgage deed and shall have the same priority over the rights of others who may acquire any rights in, or liens upon, the mortgaged real estate subsequent to the recording of such mortgage deed.

"(b) The heading of such mortgage deed shall be clearly entitled 'Open-End Mortgage'.

"(c) The loan constituting the underlying obligation for which the mortgagor is secondarily liable, which secondary liability is secured by such open-end mortgage, shall be described in such open-end mortgage deed. A description of such loan meets the requirements of this subsection if such open-end mortgage deed states: (1) The name and address of the person who is primarily liable for such loan; (2) that such underlying obligation specifically permits such advancements and, if applicable, that such advancements are made pursuant to a revolving loan agreement; (3) the full amount of the loan authorized; and (4) the terms of repayment of such loan.

"(d) The secondary liability of the mortgagor shall be described in such open-end mortgage deed. A description of such secondary liability meets the requirements of this subsection if such open-end mortgage deed states: (1) The full amount of the obligation of the mortgagor if such amount is different from the full amount of the loan authorized for the underlying obligation; (2) the date, if any, on which the secondary liability of the mortgagor will terminate; (3) the conditions, if any, which will cause the mortgagor to pay all or part of the loan constituting the underlying obligation; and (4) the conditions, if any, which will relieve the mortgagor of liability for all or any part of the loan constituting the underlying obligation or which

Naugatuck Savings Bank, initiated proceedings in the Superior Court to foreclose its mortgage on certain property that the defendant, Cynthia A. Sodlosky, had mortgaged to the plaintiff in 1989.[2] After a trial, the court concluded that the plaintiff was not entitled to a judgment of foreclosure and, accordingly, rendered judgment for the defendant.[3] The plaintiff appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to Practice Book § 4023 and General Statutes § 51-199 (c). We affirm.

The following facts are not in dispute. Beginning in January, 1987, Anthony T. Fiorenzi and Edward J. Sodlosky III[4] (developers) sought to develop a thirteen acre parcel of land located in the borough of Naugatuck into a twenty lot subdivision. The Naugatuck planning and zoning commission approved the developers' subdivision application, subject to the developers' satisfaction of a road bond requirement in the amount of $361,080. The developers, in order to satisfy the bond requirement, applied for a loan from the plaintiff, who agreed to issue a letter of credit to Naugatuck in the amount of the required bond. Accordingly, on March 18, 1988, the developers signed a promissory note pay-

will release all or part of the mortgaged premises from the lien of such open-end mortgage.

"(e) As used in this section, 'mortgagee' includes any assignee of the mortgagee, and 'mortgagor' includes any assignee of the mortgagor, and 'any person who is secondarily liable' means any person who is secondarily liable for or who is also liable for, or who has guaranteed or endorsed an open-end loan."

[2] The plaintiff's action also contained claims against other defendants arising out of the transactions that are the subject of this appeal. Those claims, however, are not relevant to this appeal.

[3] The trial court rendered judgment, in part, for the plaintiff on the defendant's counterclaim, which alleged, inter alia, violations of the Connecticut Unfair Trade Practices Act, General Statutes § 42-110a et seq. The defendant has not appealed from that judgment.

[4] The defendant is the wife of Edward J. Sodlosky III.

able to the plaintiff for "$361,080.00 or so much thereof as may from time to time be advanced" under the note.[5] On the same date, the plaintiff issued a letter of credit to Naugatuck in the amount of $361,080 in satisfaction of the borough's bond requirement. The expiration date of the letter of credit was March 18, 1990.

As work proceeded on the subdivision, the developers encountered unanticipated problems that increased the projected cost of the development. In response to the developers' request for additional funds, the plaintiff agreed to an extensive refinancing package for the project on August 10, 1989. As a condition of the refinancing, however, the plaintiff required that the defendant guaranty the developers' $361,080 obligation to the plaintiff and, in addition, that the defendant convey to the plaintiff, as security for her guaranty, a mortgage on certain property that she owned in Middlebury. The defendant agreed to do so, and executed a mortgage on her Middlebury property to the plaintiff. The mortgage contained the following relevant terms: "Whereas Edward J. Sodlosky, III is . . . justly indebted to [the Naugatuck Savings Bank] in the sum of Three Hundred Sixty-One Thousand Eighty & 00/100 Dollars with interest thereon, payable on demand together with reasonable attorney's fees and all costs of collection which [Cynthia A. Sodlosky] has agreed to pledge the herein property as security therefore. Now therefore if said note shall be well and truly paid according to its tenor, then this deed shall be void, otherwise to remain in full force and effect."

The developers and the plaintiff also signed an agreement on August 10, 1989, specifying that the mortgage on the defendant's Middlebury property would be released when and if Naugatuck reduced the bond

---

[5] At the time the promissory note was signed, it was secured by two mortgages. Those mortgages are not at issue in this appeal.

requirement by \$125,000 or more. On February 5, 1990, Naugatuck reduced the bond requirement from \$361,080 to \$253,000, a reduction insufficient to release the defendant's mortgage. The letter of credit subsequently lapsed according to its terms on March 18, 1990. Up to that point, Naugatuck had not made any claim against the plaintiff for payment pursuant to the letter of credit.

Following discussions thereafter between the developers and the plaintiff to "reissue" the letter of credit,[6] the plaintiff issued a second letter of credit to Naugatuck on June 13, 1990, in the amount of \$253,000. Upon its receipt of the second letter of credit, Naugatuck released the first letter of credit and returned it to the plaintiff. By its terms, the second letter of credit was to expire on March 18, 1991, unless the plaintiff agreed to extend the credit beyond that date.

In the summer of 1990, negotiations took place between the developers and the plaintiff concerning the continuation of the line of credit. The plaintiff informed the developers and Naugatuck in December, 1990, however, that it would not renew the second letter of credit. Thereafter, Naugatuck demanded payment in the amount of \$253,000 from the plaintiff under the terms of the letter of credit. The plaintiff honored Naugatuck's demand and made payment in full. The plaintiff, in turn, sent the developers a written notice in March, 1991, that Naugatuck's draft had "activated the line of credit which was to fund the letter should a call be made on it," and demanded payment of \$253,000 from the developers in accordance with the terms of the promissory note. When the developers

---

[6] The developers' loan application of June 6, 1990, states as the reason for the request: "Reissue bond for \$253,000—to 3-18-91 replacing Letter of Credit [#1] (\$361,080) backed by credit line secured by Anthony Fiorenzi and Edward Sodlosky III."

failed to pay the plaintiff pursuant to the note, the plaintiff initiated this action to foreclose on the defendant's mortgage.

The trial court's decision rejecting the plaintiff's claim for foreclosure rests on three alternative bases. First, the trial court concluded that an open-end mortgage securing the guaranty of a party secondarily liable for an open-end loan is enforceable only if the mortgage satisfies the requirements of § 49-4b. Because the mortgage signed by the defendant did not meet those requirements,[7] the trial court concluded that the plaintiff was not entitled to a judgment of foreclosure. Second, the trial court found that the mortgage deed's reference to the term "note" was ambiguous, and, further, that the defendant understood the reference to limit the duration of her obligation under the mortgage to the duration of the first letter of credit. In accordance with these findings, the trial court concluded that the defendant's guaranty did not extend beyond March 18, 1990, the expiration date of the first letter of credit and prior to the developers' default on the promissory note. Finally, the trial court ruled that the mortgage deed failed to comply with the statute of frauds, General Statutes § 52-550,[8] and, therefore, that the plain-

---

[7] The trial court found that "[t]he mortgage signed by [the defendant] in favor of [the plaintiff] does not meet the requirements of General Statutes § 49-4b. The mortgage is not entitled 'open-end mortgage.' The mortgage does not identify the address of Edward Sodlosky, it does not describe the primary debt as open-ended, and it does not set forth the repayment terms of the primary debt. In addition, the mortgage does not state whether the secondary liability is extinguished on the repayment of the letter of credit or on some other repayment or condition." The plaintiff does not dispute these conclusions.

[8] General Statutes § 52-550 provides: "STATUTE OF FRAUDS; WRITTEN AGREEMENT OR MEMORANDUM. (a) No civil action may be maintained in the following cases unless the agreement, or a memorandum of the agreement, is made in writing and signed by the party, or the agent of the party, to be charged: (1) Upon any agreement to charge any executor or administrator, upon a special promise to answer damages out of his own property;

tiff could not enforce the mortgage against the defendant.

The plaintiff challenges each of these conclusions on appeal. First, the plaintiff maintains that the mortgage is enforceable notwithstanding its noncompliance with § 49-4b. Specifically, the plaintiff contends that strict adherence to the statutory requirements is not necessary when, as here, the original mortgagee seeks to enforce the mortgage against the original mortgagor. In such circumstances, the plaintiff argues, § 49-4b does not supplant equitable principles recognized in the common law of mortgages that would permit enforcement of the mortgage in this case. Second, the plaintiff claims that the term "note" in the mortgage deed unambiguously refers to the promissory note signed by the developers, and, accordingly, that the defendant remained liable for the developers' obligation to the plaintiff as of the date of the developers' default on the promissory note. Finally, the plaintiff argues that the statute of frauds does not apply to the type of guaranty at issue here and that, in any event, there has been no showing of fraud in this case.

We agree with the trial court that the requirements of § 49-4b are mandatory. Accordingly, because the mortgage deed did not substantially comply with the terms of § 49-4b, the trial court properly denied the plaintiff's claim for a judgment of foreclosure against the defendant.

---

(2) against any person upon any special promise to answer for the debt, default or miscarriage of another; (3) upon any agreement made upon consideration of marriage; (4) upon any agreement for the sale of real property or any interest in or concerning real property; (5) upon any agreement that is not to be performed within one year from the making thereof; or (6) upon any agreement for a loan in an amount which exceeds fifty thousand dollars.

"(b) This section shall not apply to parol agreements for hiring or leasing real property, or any interest therein, for one year or less, in pursuance of which the leased premises have been or are actually occupied by the lessee, or any person claiming under him, during any part of the term."

## I

Before turning to an analysis of the plaintiff's claim under § 49-4b, we briefly review the law governing letters of credit. Although our disposition of the plaintiff's claim under § 49-4b renders it unnecessary for us to resolve the other issues raised by this appeal, a discussion of the law pertaining to letters of credit will serve both to clarify the confusion caused by the language of the mortgage deed, and to illustrate why that confusion could have been avoided had the deed complied with the requirements of § 49-4b.

"The law that governs letters of credit in this state is contained in article 5 of the Uniform Commercial Code, General Statutes §§ 42a-5-101 through 42a-5-117. A letter of credit, under the code, is an engagement by a bank or other person, made at the request of a customer, that the issuer will honor drafts or other demands for payment upon compliance by the beneficiary with the conditions specified in the credit. General Statutes § 42a-5-103 (1) (a); *New York Life Ins. Co.* v. *Hartford National Bank & Trust Co.*, 173 Conn. 492, 498, 378 A.2d 562 (1977); B. Clark, The Law of Bank Deposits, Collections and Credit Cards (Rev. Ed. 1981) § 8.2; J. White & R. Summers, Uniform Commercial Code (2d Ed. 1980) c. 18." *Armac Industries, Ltd.* v. *Citytrust*, 203 Conn. 394, 397–98, 525 A.2d 77 (1987).

"Letter of credit transactions have a tripartite nature because they involve three separate commitments. The first is the underlying contract between the customer and the beneficiary, here the [road bond agreement between the developers and Naugatuck]. The second is the contract between the customer and the issuer, here the contract between [the developers and the plaintiff] concerning the issuance of the credit in exchange for the customer's promise to reimburse the issuer for

payments made in conformance with the terms of the credit. The third is the letter of credit itself, obligating the issuer to honor proper drafts or other demands for payment by the beneficiary, if accompanied by the documentation required by the credit." Id., 398; see also 2 J. White & R. Summers, supra, (3d Ed. 1988) § 19-2, pp. 7–11.

In the law of letters of credit, "the single most important legal principle is the independence of these three commitments . . . ." *Armac Industries, Ltd.* v. *Citytrust*, supra, 203 Conn. 398. Although the underlying contract, the letter of credit and the reimbursement agreement together define the parties' relationship, each of these agreements creates a separate and distinct obligation. Thus, no obligation in the three party arrangement is contingent on the performance of any of the other obligations. 2 J. White & R. Summers, supra, (3d Ed. 1988) § 19-2, p. 8. For example, the issuer's obligation to honor a proper payment demand by the beneficiary is not contingent on the beneficiary's performance of the underlying contract with the customer. General Statutes § 42a-5-114 (1); *New York Life Ins. Co.* v. *Hartford National Bank & Trust Co.*, supra, 173 Conn. 497–99. Similarly, the issuer's obligation to honor payment demands by the beneficiary is independent of any obligation of the customer to the issuer. 2 J. White & R. Summers, supra, (3d Ed. 1988) § 19-2, p. 9.

In seeking to apply these general principles to the transactions at issue in this case, the trial court found that "[t]he term 'note' in the mortgage deed is ambiguous because it could refer either to the promissory note dated March 18, 1988, or [to the first] letter of credit . . . both of which evidence a debt owed by Edward Sodlosky III in favor of [the plaintiff] in the amount of $361,080.00."[9] The trial court further found that

---

[9] The mortgage deed contains only one reference to the term "note," which is not otherwise described or identified in the deed.

"Cynthia Sodlosky understood that the mortgage secured her husband's debt obligation in the amount of $361,080.00 pursuant to [the first] letter of credit . . . which expired on March 18, 1990." Consistent with these findings, the court concluded that the mortgage secured the developers' obligation to the plaintiff only until the expiration of the first letter of credit on March 18, 1990, and, accordingly, that the defendant was no longer liable as a guarantor of that obligation at the time of the developers' default on the promissory note.

As the trial court determined, the defendant's apparent confusion as to the nature of her obligation under the mortgage deed stemmed from the failure of the deed adequately to describe the obligation. We disagree with the trial court, however, that the term "note" in the mortgage deed could have referred to the first letter of credit.[10] As we have discussed, the obligation created by the letter of credit rested solely and exclusively with the plaintiff, not with the developers. As a matter of law, therefore, the letter of credit, contrary to the conclusion of the trial court, did not "evidence a debt owed by Edward Sodlosky III." Moreover, although one who provides a secondary guaranty for the obligation of another may limit that guaranty to a period shorter than the duration of the underlying obligation; see General Statutes § 49-4b (d) (2); there is nothing in any of the documents relating to the transactions, including the promissory note, the letters of credit and the mortgage deed, to support the conclusion that the defendant's guaranty was so circumscribed. In view of the paucity of information contained

---

[10] We do not understand the trial court to suggest that the mortgage deed reasonably may be construed as a guaranty for the letter of credit. Such a construction would serve to place the defendant in the implausible position of having secured the plaintiff's obligation to Naugatuck, a bizarre result that neither party claims was intended.

in the mortgage deed concerning the nature of the defendant's guaranty, however, the defendant's apparent misunderstanding as to the duration of her obligation under the deed is not surprising.[11] Any such confusion could have been avoided had the mortgage deed complied with the requirements of § 49-4b, to which we now turn.

## II

The question of whether the mortgage deed's conceded noncompliance with § 49-4b renders the mortgage unenforceable is one of first impression for this court.[12] On the basis of the language of the statute and the applicable legislative history, we are persuaded that the legislature intended the provisions of § 49-4b to be mandatory.

Our starting point is the language of the statute itself. We have recently identified several linguistic factors significant to a determination of whether the provisions of a mortgage statute are mandatory: the use of the term "required" in the title of the statute, the use of mandatory language in the body of the statute, and the use of words of specific instruction in describing the standards established by the statute. *Dart & Bogue Co.* v. *Slosberg*, 202 Conn. 566, 573–75, 522 A.2d 763 (1987). Each of these considerations supports the conclusion that § 49-4b is mandatory.

---

[11] Because we resolve the defendant's claim under § 49-4b in her favor; see part II of this opinion; we do not reach the issue of the defendant's apparent good faith belief as to the limited duration of her obligation under the mortgage. We also do not consider the plaintiff's claim that the statute of frauds, General Statutes § 52-550, is inapplicable to the mortgage deed in this case.

[12] Although we contrasted the language of § 49-4b to that of General Statutes § 49-31b (a) in *Dart & Bogue Co.* v. *Slosberg*, 202 Conn. 566, 573–75, 522 A.2d 763 (1987), wherein we concluded that § 49-31b (a) does not impose mandatory minimum requirements for mortgage deeds but, rather, creates a "safe harbor" for real property mortgages that comply with its terms, our holding in that case concerned only the proper construction of § 49-31b (a).

To begin with, the title of § 49-4b refers to "Mortgage deed *requirements*." (Emphasis added.) Similarly, General Statutes § 49-5b, which we have construed to set forth minimum requirements necessary to satisfy the statute of frauds, is entitled *"Required* information in a mortgage contingency clause." (Emphasis added.) See *Maturo* v. *Scranton*, 177 Conn. 569, 571 n.1, 418 A.2d 928 (1979). By contrast, the title to General Statutes § 49-31b, which speaks in terms that we have held not to be mandatory, contains no language "to indicate that the information described in the statute is 'required.' " *Dart & Bogue Co.* v. *Slosberg*, supra, 202 Conn. 573.[13]

The language contained in the body of § 49-4b also supports the conclusion that its provisions are mandatory. Section 49-4b (a) states, without qualification, that a mortgage in compliance with its terms "shall secure"[14] the guaranty of secondary liability.[15] This unqualified language, similar to the mandatory provisions of § 49-5b; see *Dart & Bogue Co.* v. *Slosberg*, supra, 202 Conn. 574 ("[s]ection 49-5b . . . contains no qualifying language, providing directly that a mortgage contingency clause 'shall satisfy' the statute of frauds if it contains the specified provisions"); see also

---

[13] As we have recently noted, it is helpful, in searching for an expression of legislative intent, to compare the statutory language at issue with other statutes governing the validity of mortgages that are contained in chapter 846 of the General Statutes. *Dart & Bogue Co.* v. *Slosberg*, supra, 202 Conn. 573.

[14] We note that House Bill 6077, subsequently enacted as Public Acts 1979, No. 79-359, and codified at § 49-4b, originally provided that an open-end mortgage "may secure" the obligation of any person who is secondarily liable for an open-end loan. 22 H.R. Proc., Pt. 17, 1979 Sess., p. 5862. By amendment, however, the word "may" was changed to "shall," and the bill was passed as amended. Id.

[15] Similarly, subsection (b) of § 49-4b states that the deed "shall be clearly entitled" in a prescribed manner; subsection (c) states that the underlying obligation "shall be described" in the mortgage deed; and subsection (d) states that the secondary liability also "shall be described" in the deed.

*Maturo* v. *Scranton*, supra, 177 Conn. 571 n.1; stands in contrast to the nonmandatory provisions of General Statutes § 49-3 (mortgages are valid to secure future advances when they contain stipulated clauses that the statute describes as "*sufficiently* definite and certain" [emphasis added]); see *Dart & Bogue Co.* v. *Slosberg*, supra, 574; see also *Sadd* v. *Heim*, 143 Conn. 582, 589, 124 A.2d 522 (1956); and § 49-31b (mortgage deed "shall be deemed to give *sufficient* notice" if it provides the information enumerated therein [emphasis added]). As we have previously indicated, the use of unqualified language like that contained in § 49-4b evinces a legislative intent that the statutory provisions are to be construed as mandatory. *Dart & Bogue Co.* v. *Slosberg*, supra, 574–76.

Finally, § 49-4b describes its standards in terms of specific, rather than general, instruction. Section 49-4b provides that the following information *shall* be included in an open-end mortgage deed securing the obligation of a guarantor who is secondarily liable for an open-end loan: (1) the title "Open-End Mortgage"; (2) a description of the loan constituting the underlying obligation for which the mortgagor is secondarily liable, including the name and address of the person primarily responsible for the underlying obligation, a statement that the obligation permits advancement and, if applicable, that such advancements are made pursuant to a revolving loan agreement, the full amount of the loan, and the terms for repayment of the loan; and (3) a comprehensive description of the mortgagor's secondary liability, including the amount of the obligation undertaken if different from the underlying obligation, the duration of the secondary liability, any conditions by which the mortgagor might become responsible for paying the underlying obligation, and any conditions that might relieve the mortgaged property from the mortgage obligation. General Statutes

§ 49-4b (b) through (d). The comprehensive and detailed nature of the instructions contained in § 49-4b evidences an intent by the legislature that the requirements are to be construed as mandatory.[16] See *Dart & Bogue Co.* v. *Slosberg*, supra, 202 Conn. 574–75.

Moreover, the inclusive language of § 49-4b is to be compared with the "open-ended phraseology" of § 49-31b (a); *Dart & Bogue Co.* v. *Slosberg*, supra, 202 Conn. 574; the requirements of which are satisfied if the mortgage deed " 'furnishes information from which can be determined' the date, principal amount and maximum term of the underlying obligation." Id. Thus, while § 49-31b (a) describes only a general duty to "[furnish] information," § 49-4b specifically enumerates, in detailed mandatory and comprehensive terms, the information that is necessary to satisfy the requirements for an open-end mortgage securing a third person's guaranty of an open-end loan.

The applicable legislative history also reflects an intention by the legislature that a mortgage subject to § 49-4b shall be enforceable only if the deed satisfies the statute's requirements. Proponents of House Bill 6077, subsequently enacted and codified as § 49-4b; see footnote 14; explained that the proposed legislation established a *new* type of mortgage security. For example, Senator Myron Ballen, in expressing his support for the bill, stated that "[t]his bill would permit open-end mortgages on real property to be used as security for commercial revolving loans . . . [and] would also permit a person who guarantees an open-end loan, including a commercial revolving loan agreement, to

---

[16] As we have already indicated, mortgage deeds that include the information enumerated in § 49-4b will not be susceptible to misinterpretation of the kind that forms the core of the parties' dispute in this case, a consideration that the legislature undoubtedly took into account in setting minimum standards for an open-end mortgage securing a guaranty of an open-end loan.

secure his guarantee with a mortgage." 22 S. Proc., Pt. 10, 1979 Sess., p. 3261; see also 22 H.R. Proc., Pt. 17, 1979 Sess., p. 5860, remarks of Representative John Sponheimer ("this Bill . . . concerns itself with open end mortgages and revolving credit. What this Bill does is allow revolving credit to be secured for real estate mortgage[s]. Under existing Connecticut law, it is not possible to secure revolving credit through a mortgage, and this would allow commercial entities to be able to now secure their transactions through revolving credit situations"). These remarks indicate that the legislature, by enacting § 49-4b, understood that it was authorizing a type of secured guaranty not enforceable under the common law of this state.

The plaintiff claims that the mortgage executed by the defendant is enforceable under common law standards, citing as support the principle that a mortgage deed's failure to describe the debt with exactitude does not necessarily render the mortgage unenforceable in a foreclosure action by the mortgagee against the mortgagor. See, e.g., *Burt's Spirit Shop, Inc.* v. *Ridgway*, 215 Conn. 355, 576 A.2d 1267 (1990); *State National Bank* v. *Dick*, 164 Conn. 523, 325 A.2d 235 (1973). The plaintiff has cited no case, however, in which this principle has been applied to an action to foreclose on an open-end mortgage securing the obligation of a mortgagor who is secondarily liable for an open-end loan. Moreover, even if state common law, contrary to the assumption of the legislature, does permit the use of an open-end mortgage as security for the obligation of a person secondarily liable for an open-end loan, we nonetheless conclude that the provisions of § 49-4b are mandatory. The legislative history of § 49-4b reflects the legislature's understanding that it was establishing the exclusive means by which a mortgagee could enforce a mortgage that secured a guaranty of secon-

dary liability for an open-end loan.[17] When, as here, the intent of the legislature is clearly expressed in the language and history of the statute, that intent must be given effect, even if the antecedent assumption of the legislature is mistaken.[18] See *Frillici* v. *Westport*, 231 Conn. 418, 432, 650 A.2d 557 (1994) ("[t]hat the legislative branch enacts legislation based upon what may be a reasonable but mistaken factual or legal assumption is not a sufficient justification for the judicial branch, in interpreting and applying that legislation to a particular set of facts, to fail to give proper effect to the legislation"); see also *Fleming* v. *Garnett*, 231 Conn. 77, 91–92, 646 A.2d 1308 (1994) (" '[o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature' "); *In re Valerie D.*, 223 Conn. 492, 512, 613 A.2d 748 (1992) ("[i]t is axiomatic that the process of statutory interpretation involves a reasoned search for the intention of the legislature").

Accordingly, we conclude that § 49-4b establishes mandatory requirements for an open-end mortgage securing the obligation of a person secondarily liable for an open-end loan. Because the mortgage deed conveyed by the defendant to the plaintiff did not comply with the terms of § 49-4b, the trial court properly determined that the plaintiff was not entitled to a judgment of foreclosure against the defendant.

---

[17] We note that the legislature would have been empowered to supplant common law standards had it intended to do so. See, e.g., *Lynn* v. *Haybuster Mfg., Inc.*, 226 Conn. 282, 290, 627 A.2d 1288 (1993); *Dart & Bogue Co.* v. *Slosberg*, supra, 202 Conn. 572.

[18] We do not suggest that the proponents of § 49-4b necessarily were incorrect in assuming that mortgages of the type described in § 49-4b are unenforceable at common law. We need not resolve that issue because we conclude that the language and legislative history of § 49-4b indicate that the legislature intended to establish mandatory minimum standards for the enforceability of an open-end mortgage securing the obligation of a person who is secondarily liable for an open-end loan.

The judgment is affirmed.

In this opinion the other justices concurred.