[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
Plaintiff, Fleet National Bank (Fleet[1]) brings this action to recover outstanding balances of $269,298.96 due on a promissory note from the maker, Omni Industries, Inc. (Onmi), the endorser, Zwi Preminger, and the guarantor, Zwi Preminger, together with penalties and interest.
The defendants, Omni and Preminger, deny that they owe the plaintiff those sums alleged. Further, the defendants raise special defenses to the plaintiffs claims.
 I. FACTS
The factual situation presented by this action goes as follows. Defendant Omni, a distributor of imported non-alcoholic beer, had CT Page 12686 commercial financing arrangements with the Connecticut National Bank, now Fleet National Bank (Fleet), in which various financial products were developed for defendant 0mm including the promissory note at issue herein. Fleet seeks to recover the sums due on that note from the maker, defendant Omni. The note was executed by Omni's president, defendant Preminger. It was also endorsed by a writing purporting to be defendant Preminger's signature. Defendant Preminger denies that it is his signature as endorser, although he admits that the other signature on the document is his where he signed as president of 0mni.
In addition, the defendant Omni denies that it executed the promissory note in the sum indicated on that note. It argues that at the time the note was presented by the plaintiffs predecessor for execution by Omni's president, Preminger, only the signature page was presented to him. Further, it argues that defendant Preminger believed he was signing a note for $50,000 and not $269,298.96 now claimed by the plaintiff. Omni also argues that the plaintiff's predecessor fraudulently concealed that portion of the note that recited the total sum of the promissory note leading the defendants to believe the note was for $50,000. Thus, at most, its liability is limited to $50,000.
Further, the defendants argue that other than the $50,000 mentioned above, the basis for the total sum claimed in the note is approximately $200,000 which the plaintiff paid out on Omni's behalf when demand was made against a letter of credit issued by Fleet's predecessor at Omni's request. Omni contends that Fleet improperly paid out these sums and that Omni is not liable to Fleet for these invalid payments.
 II. DISCUSSION
A. Defendant Preminger Is Liable for the Entire Amount of the Debt
The defendants argue that the note executed on July 2, 1993, for $269, 298.96 by defendant Preminger as president of Omni did not also include his personal endorsement or guarantee. Defendant Preminger does not contest his signature on the note as president, nor on the personal Guaranty Agreement dated July 2, 1993, but rather contests the amount for which he was led to believe he would be personally liable. He maintains that he executed a personal guarantee only for a $50, 000 note.
On June 10, 1993, defendant Preminger sent a letter to Ed Walsh, Senior Vice President of Shawmut Bank stating: "As you know, I voluntarily gave to the bank a personal guarantee on the loan to Omni Industries, which had resulted from the payout of the letter of credit. In return, I was promised by the bank that the loan would be extended in three to six month periods . . . until such time as our claim against Feldschlosschen Brewery CT Page 12687 was resolved." (Exhibit 5.) To which Walsh sent a letter dated June 14, 1993 and replied, "I am not aware that you voluntarily gave your personal guarantee to the bank. In fact, I was told that the guarantee was part of an agreement with the Bank in order to extend your loan's first maturity. . Nevertheless . . . I agree to extend your note to January 1, 1994 . . . . This commitment is contingent upon your . . . signing the enclosed renewal note [and] renewal guarantee. . . . The note and the guarantee must be signed and witnessed." (Exhibit 6.) On July 2, 1993, defendant Preminger signed a commercial promissory note for $269, 298.96 in two capacities, as the Borrower in his capacity as the president of Omni Industries, Inc. and as an Endorser in his individual capacity. (See Exhibit 1.) See Catania v. Catania, 26 Conn. App. 359, 364, 601 A.2d 543
(1992) (accommodation party can sign a note as an endorser). On the same day, defendant Preminger signed a Guaranty Agreement in his individual capacity. (See Exhibit 2.) On the contract of guarantee, defendant Preminger "absolutely and unconditionally guarantee[d] full and prompt payment and performance of any and all Liabilities owed . . . by the Borrower." (Exhibit 2, Guaranty Agreement, p. 1 of 3.) Accordingly, in light of defendant Preminger's admission that previously he gave tothe bank a personal guarantee on the loan to Omni Industries, and his subsequent performance of the conditions set by the bank for renewal, including a renewed guarantee, defendant Preminger remains liable "in the capacity in which he has signed"; General Statutes 42a-3-415 (2); which is individually and personally.
Finally, in a letter dated July 2, 1993, the same day the note and guarantee were executed, Vincent Pitts of Shawmut Bank wrote a memorandum for the 0mm file wherein he memorialized that "Mr. Preminger met today with Ed Walsh, SYP, and the writer to discuss OMNI's matured $269M term note and his guarantee of the same. This was a follow-up to Ed's letter of June 14, 1993 to Preminger and to earlier discussions on this matter. . . ." (Exhibit 13.) After agreeing on an extension, "Mr. Preminger authorized the direct debit of his personal account for $13, 503.78 in back-due interest and late charges. He also provided [Shawmut] with a current Personal Financial Statement." (Exhibit 13.)
Moreover, the loan at issue was an extension of a prior debt held in the amount of $269, 298.96. (See Exhibit 7, commercial promissory note, January 7, 1992; Exhibit 8, commercial promissory note, August 17, 1992; Exhibit 9, guaranty agreement, December 7, 1990.) The two commercial promissory notes executing a loan for $50, 000 are dated April 23, 1990 and October 19, 1990, with no personal guarantees evidenced in the record. (See Exhibits 12-13.) In light of these facts, Defendant Preminger's argument that he was unaware of the amount of the loan and was led to believe that he was signing a personal guarantee for $50, 000 is unpersuasive. CT Page 12688
"Because an accommodation party signs an instrument for the purpose of lending his name to another party to it, the essential character of an accommodation party is that of a surety. General Statutes § 42a-3-415
(1)." Catania v. Catania, supra, 26 Conn. App. 364; see also Greenberg,Rhein and Margolis v. Norris-Fave Horton, 218 Conn. 162, 169, 588 A.2d 185
(1991) ("[A]n accommodation party is always a surety (which includes a guarantor), and it is his only distinguishing feature.") "Accommodation status, itself a form of guaranty, makes an accommodation party "liable in the capacity in which he has signed.' General Statutes § 42a-3415 (2)." Bizzoco v. Chinitz, 193 Conn. 304, 308, 476 A.2d 572 (1984).
"Between the immediate parties, the inferences normally to be drawn from what appears to be an accommodation endorsement may perhaps be rebutted . . . by oral proof." (internal quotation marks omitted.)Bizzoco v. Chiitz, supra, 193 Conn. 308; see General Statutes §42a-3-415 (3) (accommodation character may be rebutted by oral proof). "Although § 42a-3-415 (3) permits the admission of parol evidence to establish the accommodation status of a party to a note, it does not compel the trier of fact to conclude that the accommodation status has been proven." Catania v. Catania, supra, 26 Conn. App. 365. Defendant Preminger "has the burden of rebutting the statutory inference that he was an accommodation endorser who, under General Statutes § 42a-3-414
(1), had engaged to pay the instrument, according to its tenor at the time of his endorsement." Bizzoco v. Chinitz, supra, 193 Conn. 308-09. The court finds that the defendants have offered insufficient oral proof to overcome the statutory inference that the defendant Preminger was an accommodation endorser and, therefore, he is also liable for the full amount of the note.
B. Omni Is Liable for the Debt because Fleet was Obligated to Pay on the Letter of Credit
The defendants argue that they are not responsible for the debt at issue because the plaintiff issuer (Fleet) should not have paid on the standby letter of credit under the conditions present whenthe beneficiary, Feldschlosschen, fulfllledthe letter's expressed "call" conditions. Specifically, the defendants argue that the beneficiary committed fraud in its contractual relationship with Omni by "deliberately and in fact succeeding in destroying the business." The defendant claims that this misconduct "vitiated the entire transaction" warranting the bank to refuse payment on the letter of credit. The defendants also argue that they are not liable because the plaintiff was notified orally and by letter that these invoices were not to be honored as Feldschlosschen allegedly owed 0mm more on the underlying contract than the total of said invoices, but the plaintiff paid Feldschlosschen CT Page 12689 regardless.
The merits of the underlying contract dispute between Feldschlosschen and Omni were not litigated because the parties settled the dispute out of court. The court need not decide these underlying contractual issues on their merits. The court need only decide whether the record reflects "fraud so serious as to make it obviously pointless and unjust to permit the beneficiary to obtain the money." Ground Air Transfers, Inc. v.Westates Airlines, Inc., 899 F.2d 1269, 1272-73 (1SC Cir. 1990).
"The law that governs letters of credit in this state is contained in article 5 of the Uniform Commercial Code, General Statutes 42a-5-101
through 42a-5-117. A letter of credit, under the code, is an engagement by a bank or other person, made at the request of a customer, that the issuer will honor drafts or other demands for payment upon compliance by the beneficiary with the conditions specified in the credit." NaugatuckSavings Bank v. Fiorenzi, 232 Conn. 294, 302, 654 A.2d 729 (1995). Letter of credit transactions involve three separate commitments. See id. "The first is the underlying contract between the customer and the beneficiary [Omni and Feldschlosschen]. The second is the contract between the customer and the issuer [here the contract between Omni and Fleet] concerning the issuance of credit in exchange for the customer's promise to reimburse the issuer for payments made in conformance with the terms of the credit. The third is the letter of credit itself, obligating the issuer [Fleet] to honor proper drafts or other demands for payment by the beneficiary [Feldschlosschen], if accompanied by the documentation required by the credit." Id., 302-03.
"The single most important legal principle is the independence of these three commitments"; id., 303; "and especially the independence of the letter of credit from the underlying commercial agreement between the customer and the beneficiary." Armac Industries, Ltd. v. Citytrust,203 Conn. 394, 398, 525 A.2d 77 (1987). As a result, "[c]ourts have typically considered the letter of credit as "independent' of the contract. That is to say, [courts] have considered it a separate agreement with, say, the issuing bank, that permits the beneficiary to present the documents that satisfy the "call' conditions, and that requires the bank to honor the letter when the beneficiary does so."Ground Air Transfers, Inc. v. Westates Airlines, Inc., supra, 899 F.2d 1272; see, e.g., New York Life Ins. Co. v. Hartford NationalBank Trust Co., 173 Conn. 492, 378 A.2d 562 (1977), on appeal after remand 2 Conn. App. 279, 477 A.2d 1033 (1984); see also U.C.C. Sec. 542a-5-114, comment 1 ("The letter of credit is essentially a contract between the issuer and the beneficiary and is recognized by this Article as independent of the underlying contract between the customer and the beneficiary."). CT Page 12690
Where a party seeks a preliminary injunction "to prevent a bank from honoring a disputed letter of credit . . . [sluch relief has been held to be warranted where . . . the customer (Omni) makes a showing that the necessary documents as set forth in the letter of credit were not tendered or were improper." (Citations omitted; internal quotation marks omitted.) Putnam Riverview v. Yankee Gas Services, Superior Court, judicial district of Fairfield at Bridgeport, Docket No. 279020 (February 19, 1991, Hodgson, J.). In Ground Air Transfers, Inc. v. WestatesAirlines, Inc., supra, 899 F.2d 1269, a federal court held that courts may not normally issue injunctions on letter of credit payments with the important exception of instances involving fraud. See id., 1272. The fraud must be "so serious as to make it obviously pointless and unjust to permit the beneficiary to obtain the money. Where the circumstances plainly show that the underlying contract forbids the beneficiary to call a letter of credit, . . . where they show that the contract deprives the beneficiary of even a colorable right to do so, . . . where the contract and circumstances reveal that the beneficiaries demand for payment has absolutely no basis in fact, . . . where the beneficiary's conduct has so vitiated the entire transaction that the legitimate purpose of the independence of the issuer's obligation would no longer be served, then a court may enjoin payment." (Citations omitted; emphasis omitted; internal quotation marks omitted.) Id., 1272-73.
The court in Ground Air Transfer refused to enjoin payment on the letter of credit holding that "[s]ince the letter of credit at issue [was] an ordinary "standby' or "guarantee' letter, since [the beneficiary could] readily fulfill the letter's expressed "call' conditions, and since, in doing so, [the beneficiary's] call would not amount to "fraud, ' commercial law, as embodied in the law of [Connecticut], would forbid a court to enjoin [the beneficiary] from calling the letter, whether or not that court believed that eventually [the beneficiary] would lose its case on the underlying contract." Ground Air Transfer, Inc. v. WestatesAirlines, Inc., supra, 899 F.2d 1273. Our Supreme Court has stated that "[o]nly in rare situations of egregious fraud would § 42a-5-114 have justified the issuer . . . in going behind apparently regular, conforming documents; such fraud must be narrowly limited to situations . . . in which the wrongdoing of the beneficiary has not vitiated the entire transaction that the legitimate purposes of the independence of the issuer's obligation would no longer be served." (Internal quotation marks omitted.) New York Life Ins. Co. v. Hartford National Bank and TrustCo., supra, 173 Conn. 501.
Accordingly, the present defendants have the burden of proving that the letter of credit was wrongfully paid because the necessary documents as set forth in the letter of credit were not tendered or were improper, or CT Page 12691 there was fraud so serious as to make payment unjust. First, the defendants fail to introduce the letter of credit and the documents presented by Feldschlosschen to draw on the letter of credit. The court, therefore, assumes that notwithstanding the defendants' claim that there was fraud in the transaction, the proper documents were presented and conformed with the conditions set forth in the letter of credit.
The defendants also argue that Feldschlosschen's fraudulent intentions were evidenced in the November 17, 1989, letter sent by Feldschlosschen to its counsel which "set forth several options to pursue [sic] the intentional destruction of 0mni."[2] (Defendant's post-trial memorandum of law, August 9, 2000.) A copy of the letter was sent to the plaintiff along with a letter sent by defendant Preminger on December 4, 1990, detailing Feldschlosschen' s wrongdoing. In addition, defendant Preminger orally advised plaintiffs agent of Feldschlosschen' s misconduct and their pending lawsuit on the underlying contract in federal court. The defendants maintain that Feldschlosschen's actions "vitiated the entire transaction" and, therefore, the bank did not act in good faith by paying on the letter of credit while it was on notice of such fraud.
Although the defendants argue that Feldschlosschen's conduct rises to this level, the court is not convinced. "The issuer's duty to pay is measured by the compliance of the beneficiary's tender with the [conditions] of the credit without regard to the beneficiary's performance or nonperformance of the underlying contract." ArmacIndustries, Ltd. v. Citytrust, supra, 203 Conn. 399. Accordingly, "[wihether in satisfying those conditions. the beneficiary is, or is not, violating the terms of some other document, such as an underlying contract, is normally beside the point. . . ." Ground Air Transfers,Inc. v. Westates Airlines, Inc., supra, 899 F.2d 1272. An "issuer must honor a . . . demand for payment which complies with the terms of the relevant contract regardless of whether the . . . documents conform to the underlying contract . . . between the customer and the beneficiary." General Statutes § 42a-5-114(1). "And, that is why the U.C.C. narrowly circumscribes the circumstances under which a court can enjoin the issuer from making such a payment"; Ground Air Transfer, Inc. v.Westates Airlines, Inc., supra, 1272; by providing that "[u]nless otherwise agreed when documents appear on their face to comply with the terms of a credit but a required document is forged or fraudulent or there is fraud in the transaction . . . (b) an issuer acting in good faith may honor the draft or demand for payment despite notification from the customer of fraud, forgery or other defect not apparent on the face of the documents but a court of appropriate jurisdiction may enjoin such honor." General Statutes § 42a-5-114 (2). "As a result, a letter of credit customer may have to reimburse a bank for its payments even though the customer might have a defense in a direct action on the underlying CT Page 12692 contract by the beneficiary of the letter of credit." Armac Industries,Ltd. v. Citytrust, supra, 203 Conn. 399.
The defendants also argue that the plaintiff was notified orally and in writing, that certain invoices were not to be honored upon presentment because Feldschlosschen owed Omni more than the total amount of said invoices. Defendant Preminger allegedly sent two letters to the plaintiff, one dated October 5, 1990, which no longer exists, and another dated November 12, 1990, evidenced in Exhibit D, requesting that the plaintiff withhold payment on invoiced specified therein. The plaintiffs agent allegedly stated that the invoices would not be honored. Nevertheless, the plaintiff paid Feldschlosschen upon presentment of the invoices. The defendants maintain this payment was in violation of its statutory obligation to exercise good faith in accordance with §42a-5-109 (1).[3]
Despite the notification from Omni of debt issues regarding the underlying contract between Ornni and Feldschlosschen, the plaintiff was obliged to pay on these accounts when presented with the proper documents that conformed with the conditions of the letter of credit and were not defective on their face. General Statutes § 42a-5-114 (2).
Moreover, the letter requests that these invoices not be paid because of the debts and disputes on the underlying contract between Feldschlosschen and Omni. "[I]t is important to stress that the letter of credit arrangement is completely independent of the underlying contract between the beneficiary of the letter of credit and the issuing bank's customer who has procured the letter of credit. Because of this independence, the issuing bank has a duty to honor drafts or demands for payment where there is factual compliance with the terms of the letter of credit without reference to the terms of the underlying contract." NewYork Life Ins. v. Hartford National Bank and Trust, supra,173 Conn. 498-99; see also General Statutes § 42a-5-114 (1). "Thus, no obligation in the three party arrangement [of the letter of credit] is contingent on the performance of any of the other obligations. . . . Similarly, the issuer's obligation to honor payment demands by the beneficiary is independent of any obligation of the customer to the issuer." Naugatuck Savings Bank v. Fiorenzi, supra, 232 Conn. 303.
Finally, "[a] letter of credit is not to be confused with a contract of guaranty or suretyship, because under the letter of credit . . . the issuer becomes bound in the first instance [primarily liable] to pay the beneficiary, and the beneficiary may look immediately to the issuer for payment of drafts presented." (Citations omitted; internal quotation marks omitted.) New York Life Ins. v. Hartford National Bank and Trust, supra,173 Conn. 498. Accordingly, "an issuer which has duly honored a . . . CT Page 12693 demand for payment is entitled to immediate reimbursement of any payment made under the [letter of] credit." General Statutes § 42a-5-114
(3).
Therefore, the court finds for the plaintiff and against both defendants on the issues raised in its complaint, including those issues raised by the defendants' special defenses.
Judgement may enter for the plaintiff against both defendants named in the complaint, together with costs.
BY THE COURT
Kremski, J.T.R.